## PENNSYLVANIA R. CO. v. JOSHUA W. LIPPINCOTT. SAME v. THE CHURCH OF THE COVENANT. SAME v. ELLEN Y. STERNER, ADM'X. SAME v. GEORGE W. HUNTER.

ERROR TO THE COURTS OF COMMON PLEAS NO. 4 AND NO. 2 OF PHILADELPHIA COUNTY.

Argued April 5, 1887—Decided May 31, 1887.

A railroad company constructed a viaduct or elevated roadway upon property owned by it in fee lying on one side of a street, and operated its steam railway thereon. From the noise, smoke and dust caused by the engines and cars, the necessary consequence of the operation of the railroad, injuries resulted to the plaintiff's property on the opposite side of the street, no portion of which property was taken or used in the construction of said viaduct. In an action on the case for such injuries, the court below instructed the jury that the plaintiff could recover, and that the measure of damages would be the difference between the market values before and after such construction: Held,

1. That such instruction was error.

2. That, except on proof of negligence, the lawful use by a railroad com-

pany of a lawful erection entirely upon its own property, is not the subject of damage, even under section 8, Article XVI., of the Constitution.

3. Pusey v. Allegheny, 98 Penn. St. 522; Pittsb. Junction R. Co. v. McCutcheon, 18 W. N. 527; Penn. R. Co.'s App., 18 Idem 418, distinguished.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

Nos. 180, 181, 182, January Term 1887, Sup. Ct.; Court below, No. 58 September Term 1884, No. 32 March Term 1885, No. 80 March Term 1883, C. P. No. 4: No. 127 January Term 1887, Sup. Ct.; No. 258 September Term 1882, C. P. No. 2.

These cases below were several actions on the case by Joshua W. Lippincott and Eliza G. Lippincott, his wife, in right of said wife, The Church of the Covenant in the city of Philadelphia, Ellen Y. Sterner, administratrix of Edward Y. Sterner, and George W. Hunter, brought against the Pennsylvania Railroad company—the first three, in the order of the title hereof, in the Court of Common Pleas No. 4, and the last one in the Court of Common Pleas No. 2, to recover damages for injuries to real estate. They were tried separately, but near the same time, and in this court they were argued together.

The declarations set forth the ownership of plaintiffs, respectively, of properties situate on the north side of Filbert street, in Philadelphia, and charged injuries by the defendant company in the building and construction of its viaduct or elevated roadway along the south side of said street to reach its terminal station on Broad street, the placing thereon of its tracks, works and other improvements, and the use and operation of said railroad with locomotives, engines and cars upon said structure, causing the properties to become greatly depreciated in value.

The roadway is erected upon substantial brick arches on property owned by the defendant company in fee, and the properties of the plaintiffs are separated from the viaduct by the whole width of Filbert street, fifty-one feet wide. There was evidence in one case, that there were eight tracks in front of the plaintiff's house, and that as many as fourteen hundred and forty trains daily, or about an average of one a minute,

passed Seventeenth and Filbert streets, where a record was kept. Much evidence was given to show the dust, smoke, noise, sparks, etc., caused by the operation of the railroad.

The first three cases were tried before WILLSON, J.; the fourth before FELL, J.

The following points were submitted by the defendant company in each of the cases:

1. The defendant, under its charter and supplements in evidence, had full lawful authority to erect and operate the Filbert street extension or branch described in the declaration, without incurring any liability by reason thereof for consequential damages to the property of the plaintiff; the uncontradicted evidence being that none of the said property was taken by the defendant, but that the entire width of Filbert street intervenes between the railroad of the defendant and the nearest point thereto of the property of the plaintiff.

2. The defendant, as purchaser of the main line of the public works of this state, under the acts of assembly and deed in evidence, had full lawful authority to erect and operate the said Filbert street extension or branch, without incurring any liability to the plaintiff for alleged consequential damages to his property; the uncontradicted evidence being that none of the said property was taken by the defendant, but that the entire width of Filbert street intervenes between the railroad of the defendant and the nearest point thereto of the property of the plaintiff.

3. The contracts contained in the charter of the defendant and the supplements thereto in evidence, as well as the contract contained in the acts of assembly and deed for the main line, already mentioned, authorized the defendant to construct said extension or branch with liability for property taken only; and no subsequent legislation by this state can impair the obligation of those contracts, or either of them, by increasing the price of the exercise of the franchises granted, by imposing an obligation to pay for property alleged to be injured, but not alleged to have been taken.

4. The property of the plaintiff being separated from the railroad of the defendant by the entire width of Filbert street, a public highway of the city of Philadelphia of the width of fifty-one feet, there is no liability on the part of the defendant for alleged consequential damages to said property.

5. The uncontradicted evidence being that the property of the plaintiff is situated on the north side of Filbert street, a public highway of the city of Philadelphia, on the opposite side from the railroad of the defendant, which does not occupy any part of said street opposite the property of the plaintiff, and is erected wholly on its own property, being a distance of fifty-one feet therefrom, and there being no evidence that any of the property of the plaintiff was taken, injured or destroyed by the construction of the said Filbert street extension or branch, the verdict must be for the defendant.

6. The plaintiff's property being situated in a thickly built portion of the city of Philadelphia and upon the opposite side of a frequented public highway, the defendant is not responsible for the consequences to the plaintiff's property of the proper and careful operation of its road.

7. Under all the evidence, the verdict should be for the defendant.

In The Church of the Covenant and Sterner cases, the following additional points were submitted:

8. The defendant, under the constitution of 1874, is not liable to the plaintiff in damages for injury to his property occasioned by the lawful and careful operation of its railroad. The liability of a corporation for injury to property not actually taken or destroyed by the corporation, extends only to the damage directly occasioned by the construction or enlargement of its works, and does not include a liability for the subsequent operation of the road in a careful manner. The jury will therefore not consider, in estimating the damages, if any, any convenience to the plaintiff or loss suffered by him in the lower value of his property in consequence of the dust, smoke, cinders, sparks, noise or other things arising or being caused by the ordinary careful operation of the defendant's railroad.

9. The defendant, being authorized by law to construct and operate its railroad opposite the property of the plaintiff, is not liable to the plaintiff for damages to his property occasioned by such construction and operation unless the road was constructed and has been operated in such a negligent way as to be a nuisance. There being no evidence that the road was constructed and is operated in such a manner, there is no liability in damages in the present case, and the verdict must be for the defendant.

10. The injury, if any, for which the plaintiff must be compensated, must be one which arises from the construction of the defendant's road as distinguished from its subsequent use or operation.

11. The proper and reasonable operation of the defendant's road by virtue of its franchise, although it may have occasioned a depreciation in value of the plaintiff's property, is not an injury for which any damages can be recovered within the meaning of the eighth section of the sixteenth article of the constitution of the state.

12. There is no evidence that the property of the plaintiff was injured by the construction of the defendant's railway within the meaning of the eighth section, article sixteenth, of the constitution of the state, and hence the verdict must be for the defendant.

These points were denied, and the jury was charged in each case, substantially, that "the legal measure of the plaintiff's damages, if the property has been injured, is this: The difference between the market value of the whole property before the railroad was built and its market value after the structure was completed."

Verdicts were rendered in favor of Mrs. Lippincott for $4,235, of The Church of the Covenant for $19,333.33, of Mrs. Sterner for $2,633.50, of Mr. Hunter for $3,500, and judgments being entered, the defendant company took these writs and assigned for error the refusal to affirm the said points.

*Mr. Wayne MacVeagh* (*Mr. James A. Logan* and *Mr. A. H. Wintersteen* with him), for the plaintiff in error:

The question raised in the first, second and third points was practically passed upon in Penn. R. Co. v. Duncan, 111 Penn. St. 352. That case decided that the Pennsylvania R. Co. is liable for whatever damages are imposed upon corporations vested with the power of eminent domain by the constitution of 1874. The action was for injury to a plaintiff's property at Twenty-third and Filbert streets; the plaintiff's easements were practically destroyed. The cases at bar present the new question whether a railroad company, constructing and operating a railroad upon its own property in the heart of a city, is, without negligence, liable for the conse-

quences to properties on the opposite side of a highway fifty-one feet wide, resulting from the proper and careful exercise of its franchise.

Independent of section 8, Article XVI., of the constitution it could never be claimed that an action would lie in such cases as the present, for there was no taking of property in the sense of the old law. But even under this constitutional provision, there is no valid claim for compensation in these cases.

1. The 8th section of Article XVI. of the constitution requires compensation to be made to property owners for such injuries only as would be actionable at common-law if done by a person not invested with the state's right of eminent domain: Edmundson v. Railroad Co., 111 Penn. St. 320; Shrunk v. Navigation Co., 14 S. & R. 71; Lehigh Bridge Co. v. Lehigh Coal & Nav. Co., 4 R. 23; Watson v. Railroad Co., 37 Penn. St. 469; Sunbury & Erie R. Co. v. Hummell, 27 Idem 104; Lehigh Valley R. Co. v. Trone, 28 Idem 206; Pittsb. & Lake Erie R. Co. v. Jones, 111 Idem 204.

From the cases cited, it is clear that the word "injured," as used in the constitution, can mean but one thing, namely, a *legal wrong*, or such an interference with another's right as would be the ground of an action at common-law. And such is the meaning of the word as established in the English courts: Denver v. Bayer, 23 Amer. Law. Reg., N. S. 447; Rochette v. Railway Co., 17 Amer. & E. R. C. 194; Caledonia R. Co. v. Ogilvy, 2 McQ. 229; Ricket v. Railway Co., 2 H. of L. 175; Caledonia R. Co. v. Walker's Trustees, L. R. 7 App. C. 259.

2. The injuries to the plaintiffs, arising from the construction of the defendant's road on the opposite side of the street on its own property, are not such injuries as would be actionable at common-law if done by a person or corporation vested with a franchise to operate a steam railroad, and not vested with the state's right of eminent domain. The defendant, therefore, is not liable for such injuries: Penn. Coal Co. v. Sanderson, 113 Penn. St. 126; West Cumberland I. & S. Co. v. Kenyon, L. R. 11 Ch. D. 787; Panton v. Holland, 17 Johns. 99; Thurston v. Hancock, 12 Mass. 220 (7 Amer. Dec. 57); Platt v. Johnson, 15 Johns. 213; Clarke v. Foot, 8 Idem 421; Brand v. Railway Co., L. R. 2 Q. B. 247.

In all of the cases in this court at all analogous, since the constitution of 1874, among which are Pusey v. Allegheny, 98 Penn. St. 522; Penn. R. Co. v. Duncan, 111 Idem 352; Phila. & R. R. Co. v. Patent, 17 W. N. 198; Pittsb. Junction R. Co. v. McCutcheon, 18 W. N. 527, and Pittsb. Junction R. Co. v. Smith, recently decided, the decisions are all sustainable on the ground that the plaintiff in each of them, who was the abutting property owner, owned to the middle of the highway, and, besides the fact that his land was taken, he suffered very material damage to his property in that there was an obstruction of light or an interference with free access or something of the kind.

So the English cases where the plaintiff recovered: Reg. v. Railway Co., 2 Q. B. 347; Glover v. Railway Co., 16 A. & E., N. S. 912; Reg. v. Railway Co., 14 Q. B. 25; Chamberlain v. Railway Co., 2 B. & S. 605; Beckett v. Railway Co., L. R. 3 C. P. 82; Metropolitan Board of Works, L. R. 7 Eng. & I. App. 243; Caledonia R. Co. v. Walker's Trustees, L. R. 7 App. C. 259. So the cases of other states in this country: Proprietors of Locks and Canals v. Railroad Co., 10 Cush. 385; Presbrey v. Railroad Co., 103 Mass. 1; Ermes v. Worsted Co., 11 Met. 570; Fuller v. Manufacturing Co., 16 Gray 460; Pub. Stat. Mass. 1882, p. 618; Wood's R. Law, § 212.

If, however, it should be held that the plaintiff's properties have been injured within the meaning of the constitution, it remains to consider the position that

3. The constitution provides only for compensation arising from the construction of the railroad. There can be no compensation for injuries to persons or property (unaccompanied with negligence), arising from the operation or use of the railroad, as distinguished from its construction: Newcastle & F. R. Co. v. McChesney, 85 Penn. St. 522. "Without the word 'use,' the injury for which a railroad is liable would simply be such as results from the construction and repair of the road:" 3 Conv. Deb. 605, and ante from p. 600.

Under the Land Clauses Consolidation Act, 8 and 9 Vict. Ch. 18, sections 63 and 68, have been decided: Rickett v. Railway Co., L. R. 2 Eng. & I. App. 198; Hammersmith & City R. Co. v. Brand, L. R. 4 Eng. & I. App. 171; Caledonia R. Co. v. Walker's Trustees, L. R. 7 App. C. 259. See also

Penny v. Railway Co., 7 E. & B. 660; Glasgow U. R. Co. v. Hunter, L. R. 2 Scotch & Div. App. 78.

*Mr. E. G. Platt* for Mr. Lippincott and wife, defendants in error:

Relied upon Pittsb. Junction R. Co. v. McCutcheon, 18 W. N. 527, and Pittsb. Junction R. Co. v. Smith, unreported.

*Mr. G. Heide Norris* and *Mr. M. Hampton Todd* for Mr. Hunter, defendant in error:

1. It is clear from 3 Conv. Deb. 598, *et seq.*, that it was simply the intention to make the corporation responsible in the same way that an individual would be ; to cover fully any and every damage recognized by the common law. It was agreed on all hands by the members of the convention that the proper measure of damage would be the depreciation in the market value after the injurious construction : 3 Conv. Deb. 588–600.

2, 3. If a recovery is to be had upon the ground of a common-law injury, there can be but little doubt that unless the acts of the railroad company would constitute a *nuisance*, such as an individual would be responsible for, these actions could not be sustained. It is settled that while certain acts would not be nuisances in one locality, they are nuisances in others : Wood on N. 577, 679, 693, 603; 3 Bl. Com. 215; Hughes v. Heiser, 1 Binn. 463; Richard's App., 57 Penn. St. 105. "Noises that distress and annoy physically and may affect health are regarded as nuisances, and the ownership of property will not justify the use of it in that way:" Sparhawk v. Railway Co., 54 Penn. St. 402; McCaffrey's App., 105 Idem 253; Faust v. Railway, 3 Phila. 165 ; Harvey v. Railroad Co., 47 Penn. St. 436; Pottstown Gas Co. v. Murphy, 39 Idem 257; P. F. W. & Ch. R. Co. v. Gilleland, 56 Idem 451; West Penn. R. Co. v. Hill, 56 Idem 465; Columbia Bridge Co. v. Guisse, 35 N. J. L. R. 562; Brand v. Railroad Co., 2 Q. B. 223; s. c. L. R. 4 Eng. & I. App., 171.

4. Damages were claimed not for actual operation, but contemplated operation : 3 Conv. Deb. 600. The cases where recovery has been allowed for injuries where the contemplated operation was an element of damages are

*a.* Those arising under special charters providing for conse-

quential damages where property was not actually taken, or only a portion taken : Com. v. Railroad Co., 27 Penn. St. 339; Railroad Co. v. Yeiser, 8 Idem 366.

*b.* Those arising under the act of 1849 where land was taken or where the grade of a highway was changed : East Penn. R. Co. v. Hottenstine, 47 Penn. St. 28; West Penn. R. Co. v. Hill, 56 Idem 460; W. & R. Railroad Co. v. Stauffer, 60 Idem 374; Hoffer v. Penn. Canal Co., 87 Idem 225; Pittsb. B. & B. R. C. v. McCloskey, 16 W. N. 561; Setzler v. Railroad Co., 17 Idem 301.

*c.* Since the new constitution, where no land is taken, but where the property is injured or destroyed : Reading v. Althouse, 93 Penn. St. 400; Pusey v. Allegheny, 98 Penn. St. 522; Pittsb. Junction R. Co. v. McCutcheon, 18 W. N. 527; Penn. R. Co.'s App., Idem 418; in which last case, this court said : " But he who has his dwelling fronting on the street . . . . . who is subject to the smoke, noise and other incidents of railway trains passing near his door, suffers a special injury. Were the road lawfully constructed, the only question would be, whether the plaintiff's lots were worth less by reason of the construction, and if so, how much."

OPINION, MR. JUSTICE GORDON :

The above named three several cases involving, as they do, similar facts and principles of law and having been argued together, we dispose of in one opinion. The actions are case, and the plaintiffs, who own property on the north side of Filbert street, in the city of Philadelphia, severally complain, that the Pennsylvania Railroad company, being a corporation duly chartered under the laws of this state, and invested with the privilege of taking private property for its corporate use, did, on the first day of May, 1881, construct, as an extension of its system of tracks and road bed, a viaduct or elevated roadway, and railroad thereon, along the south side of Filbert street, opposite to their several lots of ground : That since December 1, 1881, the said company, defendant, has used and operated the said viaduct, in connection with its other tracks, as a continuous line of railroad for the transportation of passengers and freight to and from its terminal passenger and freight station, and as a yard for shifting and making up trains : That in consequence of the noise, disturbance, smoke,

sparks, and noisome and unhealthy vapors, occasioned and emitted by the defendant's cars and locomotives, great injury has been done to the plaintiff's property. It is not alleged that any injury has resulted from the erection of this elevated roadway, nor, indeed, could it truthfully be so alleged; for the erection is on the defendant's own ground, on the south side of the said street, which street is some fifty-one feet wide, so that no part of the plaintiff's property, or any right of way, or other appurtenance thereunto belonging, has been taken or used in the erection or construction of said viaduct. The damage complained of results wholly from the manner in which the roadway is used; results from the noise, smoke and dust arising from the use of the engines and cars; the necessary consequence of the use of the property as a steam railway. As the allegations thus made were in whole or in part supported by evidence, the learned judge instructed the jury that the measure of damage would be the difference between the market value of the several properties before the building of the viaduct, and the same value after the structure was completed. In other words, the same rule was applied to the cases in hand as that which applies in the case of an appropriation or taking under the right of eminent domain, excepting, of course, that as no property of any kind was taken, that element of damage was not considered. This instruction together with the negative answer of the court to the defendant's first point, raises all the questions that require consideration in this case.

That there was error in the instruction above stated, is, to us, very clear. This structure having been erected on the defendant's own land, and no property, or right, of the plaintiffs having been seized, appropriated or interfered with, we cannot understand how a rule which applies only to a taking, and never did apply to anything else, can be adapted to a case where there has been no such taking. It is not pretended that the erection itself did the plaintiffs any harm, but its use only; that is, the running of locomotives on it. We agree, indeed, that if the ordinary and proper use of the railway is to be regarded as an element of damage, as to a certain extent it is in the case of a condemnation, the rule stated is the correct one; but as this rule is not one of common-law but of

statute, it cannot apply to the case now being considered: Railroad Co. v. Yeiser, 8 Penn. St. 366. Unless, therefore, the case can be brought within some statute, the rule by which damages are measured by advantages and disadvantages ought not to have been adopted; for, as was said, in the case cited, per Mr. Justice ROGERS, "it is a principle well settled by many adjudicated cases, that an action does not lie for a reasonable use of one's right though it be to the injury of another. For the lawful use of his own property, a party is not answerable in damages, unless on proof of negligence." How, then, we ask, can a lawful erection by the Pennsylvania Railroad Company, on its own ground, be the subject of damage to the adjoining land-owners? And why may it not as put by the defendant's first point, operate and use, in a lawful manner, its Filbert street branch without subjecting itself to an action for damage? It seems to be very clear that a private person could do with impunity, on his own property, just what the railroad company has done. He might build a house, and thus shut out his neighbor's view, light and air; he might build an embankment, or run a road on or along his own line, and be liable for nothing as long as he used his house, embankment or road in a lawful manner, although in either case an injury may have been done to the adjacent property.

Who does not know that even in the country no householder escapes injury and annoyance from clouds of dust raised in dry weather by the passage of teams over the common roads? And in the cities this grievance is further aggravated by the intolerable noise occasioned by the use of stone pavements. Nevertheless, we have yet to hear of a case where one lawfully using such road or street was held liable for the injury thus occasioned.

When a company takes, by its right of eminent domain, part of a tract of land, and the damage to the balance is to be measured by the advantage over the disadvantage resulting from the company's works, in such case, as we held, in Searle v. The Railroad Co., 33 Penn. St. 57, contingent and even imaginary damages may be considered by way of offset to the alleged advantages. But whilst this is so, such damages cannot be regarded as a substantive claim. And we have a reiteration of the same doctrine in the case of the New Castle &

Franklin Railroad Co. v. McChesney, 85 Penn. St. 522, wherein Mr. Justice WOODWARD remarks, citing the case above named: "It is well settled, even under more comprehensive legislation than this, that contingent damages cannot be taken into account as a substantive claim for damage." How then, can we apply to the case in hand a rule of damages that never was applicable except under special circumstances which do not here exist?

It is contended, however, that this case is governed by the constitution of 1874, which provides, Art. XVI., sec. 8, " Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed, in the construction or enlargement of their works, highways or improvements;" and the cases of Pusey v. The City of Allegheny, 98 Penn. St. 522; Pittsburgh Junction Railroad Co. v. McCutcheon, 18 W. N. C. 527; Pennsylvania Railroad Co.'s App. Id. 418, and the Pennsylvania Railroad v. Duncan, 111 Penn. St. 352, are cited in support of the rule contended for by the plaintiffs. But it is a mistake to suppose that these cases are in point. In the first, there was not only the construction of a road but an actual taking; in the Junction Railroad and Duncan cases, the injury arose directly from the construction of the works, and the taking and obstruction of the plaintiffs' rights of way; whilst the Pennsylvania Railroad Company's Appeal covers a case where, without warrant of law, the company laid its tracks on a public street of the borough of Middletown. In the case in hand the plaintiffs sustained no injury from the construction of the viaduct; none of their property was taken, neither was any of their rights infringed; so that neither by the Constitution, nor by the cases quoted, is there a warrant for the plaintiffs' contention. We agree, that over and beyond the damages which arise from a taking of property, whether in the shape of land or a right, the constitution does impose on corporations a direct responsibility for every injury for which a natural person would be liable at common law; so we have held in the case of Edmundson v. The Railroad Company, 111 Penn. St. 316, and to this doctrine we adhere, for such, we think, is the spirit of that instrument; but beyond this we cannot go. Nor is there

any reason why we should depart from a rule so reasonable, and subject artificial persons to a burden which cannot be imposed upon natural persons.

As was said by Mr. Chief Justice TILGHMAN, in the case of Shrunk v. The Navigation Co., 14 S. & R. 71, in his comments on the company's charter, which provided that compensation should be made "if any person, or persons, shall be injured by means of any dam or dams being erected as hereinafter mentioned"; "compensation shall be made," says the learned Chief Justice, "for all damages arising from immediate injury to property, but not for any damages where there is no legal injury, which is called *damnum absque injuria*. And upon reflection we will find that this was a wise restriction. There would be no end to damages for injuries, considered in the most extensive sense of the word. For not only may owners of land contiguous to the river complain of injury by obstruction of the ascent of the fish, but all other persons living in towns or on lands near the river. There are other kinds of injury, too, sustained, particularly by owners of lands on the river, between Fairmount Dam and the Lower Falls; all these persons have lost the benefit of navigation free from toll, in batteaus, flats, etc., which was very useful, as it served for carrying produce to market, and bringing up manure for their lands; yet it has not been contended that for such injuries compensation is to be made. Suppose the health of the country to be injured by the evaporation from the dam; is compensation to be made for this, the greatest of all injuries? I presume not. Where then, are we to stop, or what is to be the boundary, if we go beyond the line which I have mentioned?"

This is the language of a very learned jurist, and the case is all the more in point in that the wording of the charter of the Navigation Company, and that of the present constitution is very much alike. Nor would the onerous and ruinous consequences be less to the defendant than those which the learned Chief Justice shows might befall the canal company were the doctrine contended for adopted. Every person who has property in city or country within hearing of the noise, or in reach of the dust of a railroad, or, for that matter, of a common road, might, in the case supposed, have damages to be

estimated as in the taking of land, or as from a permanent injury arising from the construction of the railroad. If this Pennsylvania Company has been guilty of a nuisance; if in the use of its road it makes more smoke or dust than is lawfully allowable in the working of its machinery, and the plaintiffs are thereby injured they have their remedy, but not for anything short of this. Any other rule would lead to this remarkable result, that the plaintiffs would be entitled to damages without having suffered any injury; that is, for anticipated damages, and for which a natural person could not be held liable. Moreover the corporation would thus be made responsible for the manner in which it proposed to exercise its right, though such manner might not only be lawful, but the best possible, and the least injurious to the property of others. That the defendant might have hauled its freight and passengers by ordinary carriages drawn by horses from its West Philadelphia depot, through Filbert street to its station at Broad and Market, without the risk of actionable damage, will, I suppose, not be doubted; yet, certainly, the resulting noise, dust and annoyance to the adjacent property-holders would in such case be greater than under the present arrangement. Why then, for a better method of transportation shall it be held liable? To this question no answer has been given but the dogmatic one already alluded to: "the constitution so provides." But as the constitution does not so provide, and as the plaintiffs' contention has no support either in statute or common law, we must refuse to entertain it.

> The judgments are reversed, and a *venire facias de novo* in each case is awarded.

Mr. Justice Trunkey and Mr. Justice Sterrett, dissent.

### PENN. R. CO. V. HUNTER.

Opinion, Mr. Justice Gordon:

June 1, 1887. This cause was argued with other causes by same plaintiff in error v. Lippincott, Church of the Covenant, and Sterner, and for reasons stated in the opinion already filed,                    Judgment reversed.

Mr. Justice Trunkey and Mr. Justice Sterrett, dissent.