## George B. Hindson *v.* John Markle, Appellant.

[Marked to be reported.]

*Mines and mining—Pollution of streams—Waters—Damages—Culm.*

The owner of coal mines may deposit the refuse and culm upon his own lands, and if such material be carried by extraordinary floods into a stream which runs through the land of a lower owner, and from thence spread over such land, the owner of the coal lands is not responsible in damages to the lower owner for the injury thus sustained; but if the refuse be placed on his own land in a position where it will be washed into the stream by ordinary storms, or if he deposits his refuse and culm directly in the stream, and damage thereby results to the lower owner, the mine owner or operator is liable for the damage and injury thus occa-

sioned to the lower owner: Penna. Coal Company v. Sanderson, 113 Pa. 126, distinguished.

The active managing superintendent of a coal mine, with complete control over the operations of the mine, who intentionally and voluntarily directs the deposit of culm to a place from which it is washed into a stream by ordinary storms, is personally liable in damages to a lower owner whose lands are injured thereby.

Argued April 15, 1895. Appeal, No. 122, July T., 1894, by defendant, from judgment of C. P. Luzerne Co., May T., 1890, No. 250, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ. Affirmed.

Trespass for injuries caused by the pollution of a stream from deposits of culm. Before WOODWARD, J.

At the trial it appeared that from 1880 to 1890 defendant was the managing superintendent of coal mines at Highland, and from 1890 to 1894 was a member of the firm which operated the same mines. The evidence tended to show that defendant directed that the water used in washing the coal should be carried by troughs to a point on the land of the coal company, and that some of the culm was dropped and deposited upon the land, and some of it was carried by the water in troughs directly into the stream, or into a gully which led to the stream. The fine coal dirt changed the color of the water in the stream to black. This dirt was deposited through years, until it filled the stream to its banks; and then the water overflowing the banks spread the culm over the land of plaintiff, completely destroying the cultivated land and the growing timber.

When defendant was on the stand he was asked this question :

Q. You continued to act as superintendent there up until what time ?

It was objected that the fact that John Markle, the defendant, was or was not superintendent did not in any way affect his liability for the trespass complained of and alleged in this suit.

The Court: The question involved in this offer of evidence is of very considerable importance in this mining country, and therefore we have considered it with some care. While it is

true there is no case in Pennsylvania exactly similar to this, still the doctrine of the case of Elder v. Lykens Valley Coal Company, decided last year by our Supreme Court, does seem to have some application to the present question. The doctrine of that case is about this : That the owner of mines may deposit the refuse and culm from his collieries upon his own land. If that refuse is carried into the stream by an extraordinary flood, an unusual event, without action of his own in producing it, he is not liable in damages for injuries done to neighboring property by the refuse left upon it. But if he puts his refuse where ordinary storms and floods, common events of that character, will produce this result he will be liable. Or if he leave his culm and refuse directly in a stream, and injury results to a neighboring owner, he may be liable. Under the evidence in the present case up to this time it would seem a large portion of the culm and refuse from these collieries had been running directly into what is called a stream, creek or run, and had been carried down the stream to the farm or property of the plaintiff. I am of opinion, therefore, that this evidence is competent, and that the doctrine of principal and agent may be applied to it, if Mr. Markle can be shown to have been in a legal sense the agent of the owners at the time of the event.

The objection is therefore overruled, evidence admitted, exception noted and bill sealed for defendant. [1]

Plaintiff's points were, among others, as follows :

1. That when a person has committed by misfeasance a wrongful act, either as a master or a servant, jointly with others, all are principals, and the person against whom the wrong was committed may sue one or all of them, as he may consider desirable. *Answer :* That point we affirm. [2]

2. If the jury believe under all the evidence in the case that the water pumped out of the mines known as the Markle mines, and used for washing coal, was conducted, with the culm in the same, from 1885 up to the trial of the suit, through troughs from the breakers upon the Markle lands, and from thence found its way, by the law of gravitation, to the Sandy Run creek, and thence down the same upon the lands of the plaintiff, and during all that time John Markle, the defendant, conducted said mining operations as superintendent or as one

of the principals engaged in said mining operations, and that
he knew that the culm that was carried away from the breakers
or any of it, in the manner aforesaid, found lodgment on and
was damaging the plaintiff's land, then he would be guilty in
aiding and assisting in the deposit of such culm on the lands
of the plaintiff, and would be liable in this action for whatever
damage was done to the plaintiff's land thereby. *Answer :*
That point we believe to embody the law on the subject re-
ferred to, and we affirm it.    We say to you in connection there-
with, that as a general principle of the law an agent is liable
for the misfeasance but not for the nonfeasance of his princi-
pal ; that a servant is liable to third persons for trespasses when
committed in the service of his employer or master. [3]

Defendant's points were, among others, as follows :

4.    The undisputed testimony in the case establishing that
the trespass sued upon consisted of the act of G. B. Markle
& Company washing coal mined upon their own land at their
own mines, all in the lawful and usual course of their mining
business, and that the refuse or culm was carried by the waste
water from their breaker and deposited upon their own land at
a distance from the stream, if therefore such refuse or culm
was from thence carried to the land of the plaintiff by unusual
floods only, the plaintiff cannot recover. *Answer :* We cannot
affirm that point, because the testimony referred to as undis-
puted is not undisputed in our understanding of its character.
In other words, it is not shown from the evidence in the case
that all the refuse from the Markle collieries was deposited
upon the lands of the Highland Coal Company before it en-
tered the stream. [4] . . . .

7. As the undisputed evidence in the case shows that the
mining and preparation of the coal of the defendant are done
upon defendant's land, and that the refuse therefrom is depos-
ited upon the defendant's land, and that the alleged injury that
has been done by defendant to the plaintiff's land has been done
after such lawful deposit, by the removal and movement of the
culm, by unusual storms and freshets, there can be no recovery
in this case against the defendant, and the verdict of the jury
must be for the defendant. *Answer :* That point we cannot
affirm, because the evidence referred to as undisputed is not
undisputed, as we understand it. [5]

5. The plaintiff can recover nothing from John Markle, the defendant, for the injuries occasioned by the operations of the Highland mines whilst he was general superintendent for G. B. Markle & Company and before he became a partner in the business. *Answer:* We cannot affirm that point fully. If the action was unlawful on the part of the employer, then, as we have already said, Markle, the superintendent, would be regarded as an agent, and, in our judgment, would be liable. [6]

Verdict and judgment for plaintiff for $1,850. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions ; (2–6) above instructions, quoting them.

*Geo. H. Troutman* and *G. L. Halsey*, for appellant.—A coal operator in preparing his coal for market has the right to wash it upon the land from which it is mined with water pumped from the mines; and to deposit the refuse or culm upon his own lands at any point from whence it will not be carried upon lands of his neighbor, except by unusual or extraordinary floods : Elder v. Lykens Valley Coal Co., 33 W. N. C. 333.

The owner or lessee of coal lands may develop and operate the same even to the injury of adjoining landowners without remedy on the part of the latter unless malice or negligence be shown : Penna. Coal Co. v. Sanderson, 113 Pa. 126.

An agent is not liable for the malicious neglect and refusal to keep a drain open, except to his employers : Felters v. Swan, 62 Miss. 415.

An agent who carries on a mill for the owner's benefit is not liable for its dam being maintained at too great a height, whereby the water is dammed back to the injury of another : Brown v. Paper Co., 123 Mass. 267. Our Pennsylvania authorities are to the same effect : Joyce v. Sims, 1 Yeates, 409 ; Passmore v. Mott, 2 Binn. 201; Telegraph Co. v. Dryburg, 35 Pa. 298; Painter v. City, 46 Pa. 213 ; Woodward v. Webb, 65 Pa. 254 ; Penna. R. R. v. Peters, 116 Pa. 206.

*William S. McLean, William R. Gibbons* with him, for appellee.—Evidence on the part of the appellee was that the coal wash was discharged directly into the stream. There was no evidence at all as to extraordinary floods.

A servant is liable to a third person for a tort done while in the employment of his master: 14 Am. & Eng. Ency. of Law, 873; Addison on Torts, Wood's ed. par. 99; Reeves on Domestic Relations, 372; Addison on Torts, 16, 40.

Throwing the coal dirt into the stream is a tort. The depositing upon the land is the consequence: Little Schuylkill Coal Co. v. Richards, 57 Pa. 142.

That a mine owner is liable for an injury, such as the one in the case at bar, and under such a statement of facts, has been finally settled by this court in Elder v. Lykens Valley Coal Co., 157 Pa. 490.

OPINION BY MR. JUSTICE GREEN, October 7, 1895:

It seems to us that this case was tried by the learned court below in exact accordance with our rulings in the case of Elder v. Lykens Valley Coal Co., 157 Pa. 490. The jury was distinctly instructed that the owner of coal mines may deposit the refuse and culm upon his own lands. That if the material is carried by extraordinary floods into a stream, which runs through the land of a lower owner, and from thence spreads over such land, the owner of the coal lands is not responsible in damages to the lower owner for the injury thus sustained. But if the refuse is placed on his own land in a position where it is washed into the stream by ordinary storms, or if he deposits his refuse and culm directly in the stream, and damage thereby results to the lower owner, the mine owner or operator is liable for the damage and injury thus occasioned to the lower owner. These are the precise propositions decided in the case referred to and the court below cannot be convicted of error in following them. The substance of the contention then became one of pure fact which was correctly submitted to the jury, and found by them in favor of the plaintiff. If there was evidence to justify the court in leaving the questions of fact to the jury, the verdict must be accepted as the solution of the controversy.

The fourth and seventh points of the defendant were practical requests to the court to decide the facts in favor of the defendant, but both points assumed that the testimony was undisputed that the culm was deposited and washed upon the lands of the defendant. Under the fourth point an instruction

was asked that if the jury believe that it was carried to the defendant's land by unusual floods only, the plaintiff could not recover, and by the seventh point a binding instruction that such was the fact was requested. The learned court declined the points on the ground that the testimony was not undisputed as to all the culm being deposited on the defendant's land and thence washed into the stream. The conclusion of the fourth point was correct if the premise was correct, because the finding of the fact whether the culm thus deposited was washed off by unusual floods, was left to the jury, but in the seventh point the jury was given no discretion, and the court was asked to declare as an undisputed fact that the culm was removed by unusual storms and freshets. An examination of the testimony proves conclusively that the court could not possibly have affirmed either of the points. Almost the entire testimony in the case proved that the water used in washing the coal passed, not only to the end of the trough on the culm bank, but from that point through a gully leading to the creek, and thence directly into the creek. This water was thickly charged with the fine coal dirt, and in that condition it mingled with the water of the stream, changing its color to black, depositing slowly through years, fine coal dust and culm in the bed of the stream, until it was filled to its banks, and then overflowing the banks and spreading over the land of the plaintiff to a depth of several feet, completely destroying the cultivated land and destroying also the growing timber. We fail to discover any evidence that this occurred only at times of high water and floods. On the contrary the evidence was that it was continuous, progressing at all times, constantly discoloring the water of the stream and filling its bed. Even the defendant admitted on cross-examination that the water eventually went into the stream, carrying culm with it, for several years before the trial, and making the water black.

The testimony to this effect is too voluminous to quote, it came from nearly all the witnesses in the case, and was not substantially contradicted by any. It would have been grave error to have affirmed either of the two points which presented this subject, and the verdict was entirely justified by the evidence. The case of Penna. Coal Co. v. Sanderson, 113 Pa. 126, is not at all in point. That was the mere flowage of natural water

which was discharged by natural and irresistible forces, necessarily developed in the act of mining prosecuted in a perfectly lawful manner. While the mine water thus discharged polluted the water of the stream in which it necessarily flowed, it caused no deposit of any foreign substance on the land of the plaintiff and did not deprive her of its use. The fourth and fifth assignments of error are not sustained.

All the other assignments relate to the liability of the defendant. He was the active managing superintendent of the mines from 1880 to 1890, and a member of the firm which operated the mines from 1890 to the time of the trial. During the whole time it was he who carried on and directed the work at the mines, and whether his acts and his methods of mining had the sanction of his employers or his firm, was immaterial so far as this plaintiff is concerned. It was his positive and specific acts that caused the plaintiff's injury, and we know of no principle of the law that will relieve him from liability to this plaintiff. If his acts were wrongful and occasioned injury to the plaintiff, they were acts of misfeasance for which under all the authorities he is liable. They were his own voluntary acts, not enjoined upon him by his employers or his associates so far as is disclosed in the testimony ; they were affirmative positive acts of trespass upon the plaintiff's land, they were absolutely and directly injurious to the property and rights of the plaintiff, and we are clearly of opinion he is responsible to the plaintiff for the injury done. The assignments of error are all dismissed.

Judgment affirmed.