201        63
207       ⁵172
207        504
23 SC  ⁵231
23 SC  ²380

201        63
28 SC  ⁵491

## Harvey *v.* Susquehanna Coal Company, Appellant.

*Mines and mining—Preparation of coal for market—Control of volumes of coal dust—Negligence.*

While a mining company has the right not only to mine its coal but also to prepare it for market, it must, in preparing the coal, use the most effective known means and appliances to prevent the dust generated in breaking and separating the coal from being borne and scattered by the winds over and upon adjoining and nearby properties, so as to prevent injury to such properties.

If the company uses the most effective and approved known appliances to control the dust, and some of the dust still escapes, the company is not responsible for the injurious results.

In such a case it is error for the court to ask the jury: " Could the defendant by any other device than the one that it has in use there have prevented the injury to plaintiff's property?" Such a question intimates to the jury that they might find that some other device could have been adopted and gives them a license to invent one themselves, and to find that the defendant was negligent in not having itself invented and used one like it.

*Evidence—Opinion of witness—Mines and mining—Escape of coal dust from breaker.*

In an action to recover damages to property caused by the alleged negligent escape of coal dust from a breaker, a witness may testify as to the condition of the air ducts of the breaker, where it appears that he had actually examined the breaker and premises, and had inspected the means adopted to control the dust.

*Mines and mining—Escape of coal dust from breaker—Negligence—Damages—Measure of damages.*

In an action to recover damages for injuries to property caused by the negligent escape of coal dust from a breaker, the measure of damages is, first, the cost of restoring the premises to their condition before they were

injured, unless such cost equal or exceed their value, in which event the value is the measure of damages; and second, the actual loss in rentals due to the injury to the premises.

Argued April 18, 1901. Appeal, No. 65, Jan. T., 1901, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1896, No. 106, on verdict for plaintiff in case of W. J. Harvey and H. H. Harvey v. The Susquehanna Coal Company. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Reversed.

Trespass for injuries to real estate caused by the alleged negligent escape of coal dust from a breaker. Before Halsey, J.

At the trial it appeared that the defendant was a coal company, and that one of its breakers was located in the outskirts of the borough of Nanticoke. Plaintiffs owned a number of tenement houses in the immediate vicinity of the breaker, and they claimed that these houses were injured by the alleged negligent escape of coal dust from the breaker.

W. F. Dodge, a mining engineer, was called on behalf of the plaintiff and testified at length as to the condition of the breaker. At the conclusion of his testimony defendant's counsel made the following request:

We ask to have all this testimony stricken out.

The Court: That which he does not know of his own knowledge, of course, is incompetent.

Defendant's counsel: We ask that everything he testifies to with reference to these screens and ducts be stricken out.

The Court: As to the annex?

Defendant's counsel: Yes, sir; and the size of the air ducts. He testified to the cubic feet.

Plaintiffs' counsel: "Did you see the ducts themselves? A. Yes, sir."

Plaintiffs' counsel: "Is the measurement you have given correct? A. I believe it is correct."

The Court: The screens in the annex he says he never saw. As to the testimony with reference to the screens in the annex we will sustain the motion.

Defendant's counsel: We move further to strike out all the testimony of the witness that pertains to the size of the air

ducts in the breaker and the other measurements of the main air ducts, on the ground that he now testifies he did not make these measurements himself, but he got his information from some other person who did measure them.

The Court: The motion is denied, because the witness says he believes the measurements are correct, having seen the ducts himself. Exception noted for the defendant, bill sealed. [1]

The court charged in part as follows:

[Could the defendant, by any other device than the one that it has in use there, have prevented the injury to plaintiffs' property?] [10]

[The plaintiffs allege that their said property has been permanently injured. Does the testimony satisfy you that the property has been permanently injured? If it has been permanently injured, then the measure of damages would be a sum that would be sufficient when added to the property as depreciated by the injury to make up its full value. If, however, you do not find it to have been permanently injured and the injury could be remedied by the removal of the deposit of dirt upon the property, then the measure of damages would be the plaintiffs' loss, causing a difference in the rental value of their land by the deposit of dirt upon it, unless the dirt could be removed and the property restored to its original condition for a less sum. These, gentlemen of the jury, are the two items of damages, and the two rules governing the estimate on your part of the damages as alleged to have been done these plaintiffs.] [11]

Verdict and judgment for plaintiff for $2,100. Defendant appealed.

*Errors assigned*, among others, were (1) ruling on evidence, quoting the bill of exceptions; (10, 11) above instructions, quoting them.

*F. W. Wheaton*, with him *A. L. Williams* and *H. W. Palmer*, for appellant.—The injury was damnum absque injuria: Pennsylvania R. R. Co. v. Lippincott, 116 Pa. 472; Hauck v. Tidewater Pipe Line Co., 153 Pa. 375.

The question is not whether another device would have

prevented the injury to plaintiffs' property, but whether the device actually used by defendant was that in general use as approved by experienced persons: Frankford, etc., Turnpike Co., v. Phila., etc., R. R. Co., 54 Pa. 345; Robb v. Carnegie, 145 Pa. 342; Lentz v. Carnegie Bros. & Co., 145 Pa. 612; Elder v. Lykens Valley Coal Co., 157 Pa. 490; Eshleman v. Martic Twp., 152 Pa. 68; McGettigan v. Potts, 149 Pa. 162; Keiser v. Mahanoy City Gas Co., 143 Pa. 290.

*John T. Lenahan,* with him *Edward A. Lynch,* for appellee.— The injuries resulting to appellee's property, while caused in the pursuit of a lawful calling, or business, was shown to have been carried on, so far as the failure to control coal dust was involved, in an unlawful manner by appellant's negligence. Upon the measure of damages, counsel cited: Herbert v. Rainey, 162 Pa. 529; Gavigan v. Refining Co., 186 Pa. 605.

OPINION BY Mr. JUSTICE BROWN, January 6, 1902:

The contention of the appellant is that the injury of which the appellees complain is damnum absque injuria, and Pennsylvania Coal Company v. Sanderson, 113 Pa. 126, and Pennsylvania Railroad Company v. Lippincott, 116 Pa. 472, are relied upon for its immunity from liability. In the former case the injury to the plaintiff resulted from the defendants' natural and lawful use of the land itself. They imposed nothing upon the plaintiff that she was not bound to bear as a servient owner, and the following words of the late Justice CLARK sufficiently distinguish it from the present case: " It will be observed that the defendants have done nothing to change the character of the water, or to diminish its purity, save what results from the natural use and enjoyment of their own property. They have brought nothing on to the land artificially. The water as it is poured into Meadow Brook, is the water which the mine naturally discharges; its impurity arises from natural, not artificial causes. The mine cannot, of course, be operated elsewhere than where the coal is naturally found, and the discharge is a necessary incident to the mining of it." This same case was held to be "not at all in point" in Hindson v. Markle, 171 Pa. 138, where it was decided that the owner of coal mines may deposit refuse and culm upon his own land, and if the

same are carried away by extraordinary floods into a stream which runs through the land of a lower owner, spreading thence over such lower land, the owner of the coal land is not responsible in damages to the lower owner for the injury thus sustained ; but, if the refuse is placed on his own land, in a position where it is washed into the stream by ordinary storms, or if he deposits his refuse and culm directly in the stream, and damage thereby results to the lower owner the mine owner or operator is liable for the damage and injury thus occasioned to the lower owner.   Referring to the Sanderson case and its inapplicability, the late Chief Justice GREEN said : " That was the mere flowage of natural water which was discharged by natural and irresistible forces, necessarily developed in the act of mining prosecuted in a perfectly lawful manner.   While the mine water thus discharged polluted the water of the stream in which it necessarily flowed, it caused no deposit of any foreign substance on the land of the plaintiff and did not deprive her of its use."   In Pennsylvania Railroad Company v. Lippincott, supra, the other case upon which the appellant seems to rely, where it was held that a lawful erection by the railroad company, on its own ground, and the lawful use of the same, were not the subject of damage to the adjoining landowners, it was also distinctly ruled that, if the Pennsylvania Railroad Company had been guilty of a nuisance, and if, in the use of its road, it had made more smoke or dust than was lawfully allowable in the working of its machinery, and the plaintiffs had been thereby injured, they had a remedy.

In the case before us there is no complaint by the appellees that the business of the appellant is not lawful, or that it is doing anything beyond its corporate powers and privileges, causing them loss ; no damages are claimed for injury resulting from the business itself in which the coal company is engaged, or from the natural and lawful use which it is making of its land in mining its coal, and compensation is not sought for the depreciation of the value of property occasioned to the owner of lower land from natural causes existing on that of an upper owner.   The complaint is, that after the coal is taken from the land and brought to the surface, the coal company, in its artificial breaking, separation and preparation of the same for the market, has been negligent in not controlling the large quantity

of dust necessarily created in so breaking, separating and preparing the coal, and that through its negligence in failing to so control the dust, it has been borne by the winds to and upon the properties of the appellees, resulting in the very serious injury set forth in the statement of their cause of action and testified to by their witnesses. The appellant has the right not only to mine its coal, but to prepare it for the market. In so preparing it by artificial means, volumes of dust necessarily arise, which, if not controlled, as far as possible, by proper appliances and the exercise of proper care, will be borne and scattered by the winds over and upon adjoining and nearby properties, and injuries to the same must result. If such injuries can be avoided by the most effective and approved means known of controlling coal dust, it is the duty of the appellant to adopt them. The maxim, "sic utere tuo ut alienum non lædas," as applied to this coal company, does not mean that it cannot prepare its coal for market, but that, in so preparing the same, due regard must be had for the rights of others by controlling, as far as possible, through the most effective known means, the dust generated in breaking and separating the coal. The jury were properly instructed by the learned trial judge when he said: "The defendants, in the preparation of the coal, are engaged in a lawful business. . . . The injury of which the plaintiffs complain is not in the mining of the coal, but is because of the method of its preparation for the market upon defendant's land after it is mined. Parties can reasonably use their own lands, but they must so use them as not to do injury and damage to the property rights of their neighbors. When parties are engaged in a lawful business in order to sustain an action for injury resulting therefrom, the injury must be shown to have been real and substantial, not a trifling annoyance or injury such as is necessarily incident to the business complained of. There are some injuries too slight and exceptional to be recognized as a bar to the active industries of the country. Every lawful enterprise contributes to the public good. It furnishes employment to the idle, promotes every other branch of industry, and in this way directly benefits the whole community. It is not unreasonable that the individual members of the community thus benefited should make some slight sacrifices for the public welfare. There can be no recovery in a case of

this kind based upon the theory that it is not pleasant or conducive to the plaintiffs' feelings to have this breaker in proximity to their property. There can only be a recovery upon the principle of the negligence of the defendants, and as a result of such negligence the plaintiffs have sustained more than a trifling injury ; that they have sustained a substantial injury to their property rights. Has the defendant been careless in the preparation of the coal in breaker No. 5 ? " The appellees allege that the appellant did not properly control the dust, but adopted and used defective and inadequate appliances ; and, as there was proof submitted in support of this allegation, it was not for the court to say that the injury of which they complain was damnum absque injuria, but it was for the jury to determine whether it resulted from negligence, for the consequences of which the appellant is liable. The fifth, sixth, seventh, eighth and ninth specifications of error are, therefore, overruled.

That portion of the testimony of W. F. Dodge which related, not to what he had seen, but to what had been reported to him, having been stricken out by the court, the appellant was not harmed by it. As to the rest of his testimony, no valid objection can be made. From views of the breaker and premises, and from actual inspection and examination of the means adopted to control the dust, which, according to the testimony of appellant's own witnesses, were no worse, and perhaps better, at the time he saw them, than during the six years preceding the institution of this suit, he had qualified himself to speak, and the first assignment is not sustained.

The true measure of damages in this case, if the appellant's negligence caused the injury to appellees' properties, is, first, the cost of restoring them to their condition before they were injured, unless such cost equal or exceed their value, in which event the value is the measure of damages : Lentz v. Carnegie Bros. & Co., 145 Pa. 612 ; Eshleman v. Martic Township, 152 Pa. 68 ; and to this cost of restoration should be added the actual loss in rentals due to the injury to the premises. If the appellees ought to recover, no other measure can give them just compensation, for, if they have been wronged by the appellant, they are clearly entitled not only to a restoration of their properties to their former condition, but for damages as well by being deprived of the use of them. As the case must go back

for another trial, for a reason about to be given, and the measure of damages just indicated will be observed, nothing more need be said as to the second, third, fourth and eleventh assignments.

When the court, in charging the jury, asked, " Could the defendant by any other device than the one that it has in use there have prevented the injury to plaintiffs' property? " too high a standard of care was set up for the appellant in the conduct of its lawful business. Its duty was to use the most effective and approved known appliances to control the dust; and, if some of it should escape them and settle on adjoining properties, with injurious results, no lack of care could be imputed to the company. Any damage would then be damnum absque injuria; but to intimate to the jury that they might find that some other device could have been adopted, was to give them a license to invent one themselves in their room, and to find that the appellant was negligent in not having itself invented and used one like it. They were left to conjecture what might have been done to control the dust, and to their conjectures it can hardly be pretended that the coal company could have been safely committed. The tenth assignment of error is sustained, and the judgment reversed, with a venire facias do novo.