Marshall, C. J.
 

 Several important legal questions are presented by this record for determination. First, is the location of the tracks of the steam railroad so near to the property line of the abutting owner as to prevent trucks or other ordinary vehicles from passing or being loaded or unloaded without danger from passing trains such an obstruction to or interference with access as to constitute a taking of private property in violation of Section 19 of Article I of the Ohio Constitution, which requires that a taking pf private property for public purposes shall first be compensated in money, or first secured by a deposit of money, such compensation to be assessed by a jury?
 

 The rights of the Fostoria & Fremont Railroad Company, the electric line, do not seem to be involved in this matter. We are only concerned with the property owner’s rights in so far as it is attempted to change the location of the steam railroad. It is established in Ohio that when a certain proportion of the abutting owners consent thereto a municipality may grant a franchise in a street to a street railroad company, and if there is nothing unusual about the manner of constructing or operating the street railroad, whereby obstruction to or interference with access to abutting owners results, such abutting owners are not entitled to prevent such construction and operation, even though not consenting thereto, nor are such
 
 *215
 
 owners entitled to compensation; in other words, street railways have been adjudged not to constitute
 
 per se
 
 a new servitude on a street.
 

 On the other hand, the authorities have for many years been quite uniform to the effect that a steam railroad is
 
 per se
 
 a new servitude upon a street or highway. This principle arises not out of different motive power,' or because of the additional noise or vibration or speed of trains, or the difficulty of stopping them, hut rather because of the different character of the. use. A street railroad is intended for the convenience of local traffic and is therefore a part of the use for which the street or highway was originally designed, while, on the other hand, a steam railroad operates between distant cities, and for its use and operation the public highways are seldom employed, and the cases where they are used are exceptional. It cannot therefore he assumed that the abutting owner whose land is taken for a highway, or who has voluntarily dedicated the same to the public use, has assented to its being appropriated either wholly or partly to railway purposes, or that he has been compensated for such appropriation. One of the fundamental notions of a street railroad is that it is in furtherance of the purposes for which the highway was established, by reason of being a relief to local business, and travel, which relief is a compensation for the added noise, vibration, and other dangers incident to local street railway transportation. On the other hand, a steam railroad affords no relief to local traffic, and at the same time is a much greater menace than the
 
 *216
 
 street railroad to ordinary travel of vehicles and pedestrians over the streets and highways.
 

 Without further reference to these well-settled differences we are primarily concerned in this case with the question of obstruction to and interference with access. This question necessarily involves an element of fact. It is urged on the one hand that the steam railroad tracks are now elevated above the street level which prevents crossing the steam tracks by ordinary vehicles, and that it is proposed to lower the level of the tracks, thereby making crossing more practical. However this may be, if the relocation of the tracks is so near to the property line that ordinary vehicles could not safely pass moving trains, or be left alongside of the buildings located thereon without danger from passing trains, it must necessarily constitute an obstruction to and interference with access.
 

 It is not necessary to inquire the particular use to which the property hás been put in the past. Any conceivable use for which the property is available now or hereafter must be taken into consideration, because the relocation will necessarily be permanent. To say that vehicles can cross the tracks with greater safety after the improvement for the purpose of entering upon the premises of Gfhaster is not a complete answer to the' question. The property may in the future be so improved and used that it will become necessary to load and unload trucks or other vehicles in front of it, and it is conceivable that there may be many other uses to which the property might
 
 *217
 
 become adapted. As to the extent of the damage done by such interference or obstruction we have no present concern, but we are only interested at this time in determining whether there is some substantial interference or obstruction which would render the property less valuable. In this respect there is no essential difference between a steam railroad and a street railroad. A leading authority upon the right of a property owner to be compensated is the case of
 
 Cincinnati & Spring Grove Ave. Street Ry. Co.
 
 v.
 
 Village of Cumminsville,
 
 14 Ohio St., 523. That case decided that although the Legislature might authorize the occupation of the streets and highways, which were originally acquired by grant or appropriation, in any manner calculated to further the general objects of the acquisition, it might not divert them to purposes which exclude the original uses, or lay additional burdens upon the land, or destroy or impair the incidental easement of adjoining lot owners in the street-or highway. That principle was laid down in a case where a street railway was involved and the facts were in .many respects parallel to the facts in the instant case. While it is stated in the opinion written by Judge Ranney that no compensation would have been due to the abutting owner under ordinary circumstances of construction and operation of a street railroad, it appeared that the tracks were laid, not in the center of the street, but alongside of the abutting property, where they would constitute an obstruction and an interference. It was also very forcefully pointed out that the interests of the public were, being en
 
 *218
 
 larged and the interests of the property owner diminished, and that this conld only occur upon compensation being paid to the extent of the injury to the property owner. It was therefore held that such interests of the adjoining lot owner are properly protected by the Constitution and are subject to be taken or appropriated only upon condition that compensation be made. This decision was approved and followed in
 
 Scioto Valley Ry. Co.
 
 v.
 
 Lawrence,
 
 38 Ohio St., 41, 43 Am. Rep., 419. In
 
 Railway
 
 v.
 
 Cumminsville, supra,
 
 the street railroad was operated by horse-drawn cars. In
 
 Railway Co.
 
 v.
 
 Lawrence
 
 the right to operate steam railroads over one of the streets of the city of Portsmouth was involved, and the following syllabus was declared:
 

 “(1) Where the construction of a railroad in a street of a city will work material injury to the abutting property, such construction may be enjoined, at the suit of the owners, until the right to construct such road in the street shall first be acquired, under proceedings instituted against such owners as required by law for the appropriation of private property.
 

 “(2) In such case it is immaterial whether the fee is vested in the city or in the abutting owners, so long as it is held upon the same defined uses.
 
 Railway Co.
 
 v.
 
 Cumminsville,
 
 14 Ohio St., 524, approved and followed.”
 

 In the opinion, Judge White, after stating the usual purposes for which streets and highways are appropriated and dedicated, and after referring to the power of the public to regulate and modify
 
 *219
 
 the manner of using the streets, made the following pertinent declaration:
 

 “But where these new structures and new modes of travel, devolve additional burdens upon the land, and materially impair the incidental rights of the owner in the highway, they require more than the public has, or can grant, and the deficiency can only be supplied by appropriating the private right upon the terms of the Constitution.”
 

 The opinion in that case further calls attention to the fact that the Legislature, after the decision of the
 
 Cumminsville case,
 
 made provision for street railroad companies, and fixed the terms and conditions thereof, but that no similar provision had. been made concerning steam railroads. From the foregoing authorities, as well as upon principle, the conclusion must be reached that a steam railroad upon streets and highways constitutes an added burden
 
 per se,
 
 which requires compensation to abutting property owners.
 

 We have referred only to the Ohio authorities, but the authorities of other states declaring the same proposition are numerous and uniform.
 

 In the instant case it is shown that the steam railroad has occupied Sandusky street in Fostoria for more than 65 years. It is conceded that so long as the railroad occupies its present location the property owner may not complain, and the question arises therefore, first, whether there is any power to change the location without the consent of the property owner; and, second, whether compensation for impaired access which is of a different or greater character than that already
 
 *220
 
 existing must first be made. Under the authority of
 
 Railway
 
 v.
 
 Lawrence, supra,
 
 a steam railroad can be located upon a street after franchise being granted by the city council and after compensation paid to the adjoining owner, and the instant case is no different from that case, except upon the question of relocation. In
 
 Snyder
 
 v.
 
 Pennsylvania Rd. Co.,
 
 55 Pa., 340, the court held that the city authorities might authorize a relocation of railroad tracks then existing in. the city streets by removing the same from the center of the street, and placing the same near the lot line, and declared that the same was
 
 damnum absque injuria.
 
 A careful reading of the opinion in that case, however, shows that no element of obstruction or interference was discussed. This case standing alone would not be- a decisive authority, but the case of
 
 Pennsylvania Schuylkill Valley Rd. Co.
 
 v.
 
 Walsh,
 
 124 Pa., 544, 17 A., 186, 10 Am. St. Rep., 611, is directly in point and decisive. We quote the syllabus of'that case:
 

 “(1) Where a railroad is laid down upon a public street and, though at grade, is so constructed with reference to the property of an abutting owner, that by its operation in a lawful manner access to the property, if not actually cut off, is rendered dangerous, the company is liable for consequential injuries under Section 8, Article XVI, of the Constitution.
 

 “(2) It would be an unsavory technicality to hold that a railroad laid down by the curb in front of a man’s door, with trains constantly passing and repassing, did- not interfere with his access to his house, and was not an injury caused by the con
 
 *221
 
 struction of the road. Per Mr. Chief Justice Paxson, distinguishing
 
 Penn. Rd.
 
 v.
 
 Lippincott,
 
 116 Pa., 472 [9 A., 871, 2 Am. St. Rep., 618], and
 
 Penn. Rd. Co.
 
 v.
 
 Marchant,
 
 119 Pa., 541 [13 A., 690, 4 Am. St. Rep., 659].”
 

 In the court’s opinion, at page 558 (17 A. 187). we find the following: “In that case [referring to the
 
 Marchant case],
 
 as in the prior cáse of
 
 Rail road Company
 
 v.
 
 Lippincott,
 
 116 Pa., 472 [9 A., 871, 2 Am. St. Rep., 618], there was no injury to the property by reason of the erection and construction of the road, and we held that the constitutional provision was not intended to apply to injuries which were the result merely of the operation of the road, as distinguished from its construction, and that in such case there could be no recovery for the annoyance of smoke, noise, and cinders, etc., caused by the running of the company’s trains, unaccompanied with negligence; in other words, that the injuries resulting from the exercise of a lawful business, in a lawful manner, without negligence and without malice, are
 
 damnum absque injuria.”
 

 In the opinion there is further discussion showing that that case was in many respects parallel to the instant case. It was claimed that by reason of repaving the street a benefit resulted to the property owner, by making the property more accessible from the street, just as it is claimed in the instant case that the tracks will be lowered by the repaving, thereby facilitating the driving of trucks and other vehicles over the tracks and onto the property.
 

 
 *222
 
 In
 
 Jones
 
 v.
 
 Erie & Wyoming Valley Rd. Co.,
 
 151 Pa., 30, 25 A., 134, 17 L. R. A., 758, 31 Am. St. Rep., 722, we find an authority quite definitely in point. In that case it is declared that a railroad company might lawfully enter upon and cross a public highway without liability so long as it complies with terms imposed by the • municipality and keeps within the limitation that no additional servitude be imposed upon the land covered by the public easement, but that, if it exceeds the easement and imposes a new servitude upon the land occupied by the public easement, the owner is entitled to compensation. The court cited
 
 Snyder
 
 v.
 
 Pennsylvania Rd. Co., supra.
 

 The abutting owner’s contention that the steam railroad, having once been located, cannot be relocated, must be overruled, and the sounder rule must be declared to be that the railroad company has a franchise to use the street, which is permanent in its nature, and that the general rights, which the property owner originally had, have been compensated. The general damages which flow from such use of the highway and the added burden thereto will be presumed to have been already compensated. The property owner, therefore, is entitled at this time to be compensated only for such taking as results from the special obstruction and interference resulting from the changed location.
 

 This court has repeatedly declared that the use to which the streets may be put, and the comparative dangers and inconveniences and the relative public benefits and private disadvantages that may
 
 *223
 
 result from the changed use of streets, are political questions for the consideration of the legislative branch of the municipal government, which is the sole' judge of the propriety, as well as of the necessity, of the improvement, and that such decision, when not transcending its powers, nor induced by fraud, is not subject to judicial revision. This was so declared in
 
 Wabash Rd. Co.
 
 v.
 
 City of Defiance,
 
 52 Ohio St., 262, 40 N. E., 89, and has been more recently declared in
 
 Sargent
 
 v.
 
 City of Cincinnati,
 
 110 Ohio St., 444, 144 N. E., 132.
 

 The city has already determined the political question and has ordered the railroad tracks to be relocated. The judicial question yet remains to be disposed of relating to the power to further proceed with that improvement until compensation has first been made to the abutting owner. Under the foregoing authorities, and many others which might be cited, we have reached the conclusion that an agreement must be reached whereby the damages to the abutting property owner can be adjudged, or the same determined, under Section 19 of Article I of the Ohio Constitution, by the award of a jury.
 

 Second. It is claimed by the city that inasmuch as the property owner has made a claim for his damages under Section 6950, General Code, he is estopped from further interfering with the progress of the improvement and is remitted to his claim for damages. Upon this point the city cites
 
 Wabash Rd. Co.
 
 v.
 
 City of Defiance,
 
 52 Ohio St., 262, 40 N. E., 89, and
 
 Farber
 
 v.
 
 City of Toledo,
 
 104 Ohio St., 196, 135 N. E., 533. These cases only de
 
 *224
 
 cide that a failure to make the claim within the time limited amounts to a waiver of the claim for damages, and that the statute which places a limitation of two weeks upon the filing of a claim is not in contravention of Section 19, Article I, of the Constitution. Assuming that those cases settle that proposition, they cannot be authority for denying the property owner his remedy in the instant case, because he filed his claim within the time limited, but the city has not at any time allowed or paid the claim, or made any provision looking to the ascertainment of the amount of his damages. It must therefore be held that the abutting owner is not precluded, from asserting his right to have his compensation determined in advance of the improvement.
 

 The third and last question for determination is the status of the railroad company by reason of having been dismissed from the case several months in advance of the final determination of the case in the court of common pleas; the case having thereafter been taken to the. Court of Appeals on appeal. It is quite clear that when the trial court sustained the demurrer of the railroad company and dismissed it from the case, and the plaintiff declared that he did not desire to further plead, such procedure constituted a final order as to the railroad company, and it was not thereafter a party to the proceedings, in the absence of error proceedings within 70 days or an appeal within 30 days. It can make no difference, how.ever, in the final determination of this. case, because the .city is a party to the proceedings in
 
 *225
 
 this court and an injunction against the city further proceeding to carry out the improvement until compensation is paid is necessarily a bar to further progress on the part of the railroad company.
 

 The judgments of both the lower courts must therefore be reversed, and the cause remanded to the court of common pleas, with instruction to restrain the city and county from further proceeding without first ascertaining and paying to the abutting property owner the damages for obstruction to and interference with access.
 

 Judgment reversed and cause remanded.
 

 Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.