## DELAWARE & H. CANAL CO. v. EMMA GOLDSTEIN.
## DELAWARE & H. CANAL CO. v. NATHAN JACOBS.

ERROR TO THE COURT OF COMMON PLEAS OF WAYNE COUNTY.

Argued February 28, 1889—Decided April 8, 1889.
[To be reported.]

1. Where a canal company is legally authorized to construct and maintain a canal and basin, the enjoyment of this right carries with it the corresponding duty to construct and maintain the canal and basin in such a substantial manner as not unnecessarily to injure others.

2. In order that property owners may recover damages alleged to have resulted from the leakage and flow of water from the canal basin, the plaintiffs must show negligence on the part of the company; for, damages resulting from the lawful use, of its works by the company, in the absence of malice or negligence, are damnum absque injuria.

3. Where, in such a case, the court below instructs the jury that they must find, first, that the water came from the defendant's canal; second that it came by reason of some negligence on the part of the company, and further that the burden is on the plaintiffs to establish these facts, and the jury upon submissible evidence find for the plaintiffs, the Supreme Court must assume the facts upon which the verdict necessarily rests.

(a) In an action for damages by property owners, it was alleged that the construction and maintenance of a sewer by a third party conducted the water from the basin, out of the course it might otherwise have taken and into the plaintiff's premises, and was thus the proximate cause of the injury:

4. In such case, if the sewer was lawfully constructed and maintained, the canal company was bound to take notice of the existence of such lawful structure, by means of which and the negligence of the company, the property of others might be injured.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

Nos. 151, 152 January Term 1889, Sup. Ct.; court below, Nos. 396, 402 May Term 1887, C. P.

To the term and numbers in the court below, separate actions of trespass were brought by Emma Goldstein and Nathan Jacobs, against the Delaware & Hudson Canal Co., to recover for damages to the premises of the plaintiffs respectively, caused by an overflow of water from the defendant's basin, into said premises, owing to the alleged negligence of the defendant. The cases were tried together by consent.

At the trial on October 13, 1888, the following facts appeared:

Emma Goldstein's claim was for damages to her dwelling house from the flow of water into her cellar; Nathan Jacob's was for a similar flow into the basement of his stables. The defendant was a corporation chartered under the laws of the state of New York, but having certain powers under the laws of Pennsylvania, among which were the right to construct this canal and basin. The plaintiffs' premises were near the basin, and each proved that they had been damaged by water, as above.

The plaintiffs' evidence was to the following effect: When the water in the basin was high, it flowed into plaintiffs' premises, and the flood was increased when a boat came into the basin and raised the water therein. When the water in the basin was low, it did not flow into the plaintiffs' property. At the time water first came into the plaintiffs' property there was a break in the basin, which was repaired in cold weather and backed up with common dirt. The water continued on the plaintiffs' premises until the cellars were drained by a new sewer. The matter was called to the attention of the defendant, who found a leak in the canal from which water was escaping, and made an attempt to stop the leak which was not effectual.

The defendant's evidence was to the following effect: The basin was maintained as it had been for many years, and the repairs were made in the usual manner. A branch of a river which formerly flowed near this place had recently been filled up, which might have been the source of the trouble. Other cellars below the canal level and nearer the basin than plaint-

iffs' were dry. In 1872, a sewer was built by one Snyder, to carry the water from his premises to the river, and the construction of this sewer turned the flow of water in the neighborhood out of its natural course. Defendant contended that the flow into the plaintiffs' cellars was attributable immediately to this sewer and that their basin was only the remote cause of the damage.

Both plaintiffs and defendant submitted points, which are set out and answered in the following opinion of the court, SEELY, P. J.

You have been sworn in two cases, in one of which Emma Goldstein is the plaintiff, and in the other of which Nathan Jacobs is plaintiff. The plaintiffs seek to recover from the defendant, the Delaware & Hudson Canal Company, damages which they claim they have suffered by reason of the flowing of water into their cellars, which water they allege came from the basin of the Delaware & Hudson Canal Company and came by reason of the negligence of the defendant. These two cases have been tried together by agreement of counsel, because the evidence, to a very large extent, is the same in both cases. But you will bear in mind that they are distinct cases, brought by different plaintiffs, to recover damages which are alleged to have occurred to different properties belonging to these plaintiffs.

The Delaware & Hudson Canal Company is a corporation, chartered by the state of New York, and upon which certain powers have been conferred by the state of Pennsylvania. Under their charter, they have the right to construct this canal. Whatever consequences might flow to any parties as a necessary result of the construction of this canal, such parties would be compelled to bear. When the legislature conferred the right to construct and maintain this canal upon the Delaware & Hudson Canal Company, that corporation was protected against claims for damages which necessarily arose from the enjoyment of that right. They were, however, required to construct and maintain this canal in a good and substantial manner, so as not to unnecessarily injure others. And while, as we have said, they were not to be held responsible for the necessary consequences of the construction of the canal, yet they were not free from the rule of law which requires every man to so use his own property as not to do injury to another.

The burden of proof rests upon the plaintiff, to satisfy you in the first place, that the water which came into his, or her cellar, came from the canal of the defendant. It does not seem to be controverted in this case that these plaintiffs suffered from water in their cellars. But before the plaintiffs, or either of them, can recover against this company, they must show, first, that this water came from the company's canal, and, secondly, that it came by reason of some negligence on the part of the defendant in maintaining that canal. And, as we have said before, the burden of establishing these facts is upon the plaintiffs. It is not necessary for the company to show themselves clear of negligence, until evidence is produced to establish their negligence.

In the first place, are you satisfied that the water found in the cellars of the plaintiffs came from this canal? Evidence has been given to the effect that when the water in the canal was high, the water flowed into these cellars, and that when the water in the canal was drawn down, it ceased to flow into the cellars, and from this you are asked to infer that this water came from the canal basin of the defendant; that its action was directly affected by the height of the water in the canal basin, showing an intimate relation between the two. On the other hand some evidence has been produced to show that there was an old water course, or a branch or arm of the Lackawaxen river, which has been filled up, and that the water may have come from water in that stream, or from other directions, percolating into this filling and so finding its way to the cellars of these plaintiffs. It is for you to determine this first question. Did the water that disturbed these plaintiffs come from the Delaware & Hudson Canal Company's basin? If it did not, if it is not shown to have come from there, then the plaintiffs could not recover in this action. But if it is shown to have come from the canal basin, the next question is, have the plaintiffs shown to you that it came from that basin by reason of some negligence on the part of the defendant?

Evidence has been produced here, upon the one side and upon the other, as to the uniformity of height at which the water has been maintained in the basin. Some witnesses have testified that at times the water has flowed over the bulkhead,

and across the sidewalk on Second street, while others testify that they have never seen it any higher, of late years, than it formerly was. Evidence has also been produced as to the rebuilding of a wall upon a part of this basin, and the manner in which this wall was constructed. It will be for you to determine whether that was such a good and substantial wall as ought to have been constructed for that purpose, and whether it was properly backed up when it was constructed, and whether proper care and diligence was used to prevent the water from oozing out and percolating through the ground. You have a right, in connection with all these matters, to take into consideration the history of the case; what has heretofore existed in these cellars, and about these premises, when the water first begun to appear in these cellars, and the evidence in relation to the conduct of the canal.

The Delaware & Hudson Canal Company is required to do its work in a good, substantial, and workmanlike manner, using such care and diligence in the construction of this wall, and in the construction and maintenance of the canal, as shall reasonably guard against injury to other parties. Some question has been presented, in the argument, as to whether the jury could pass upon the question of the construction of this wall, and find the company guilty of negligence. We are of the opinion that you may, as jurors, pass upon the question as to whether that wall was properly constructed. While we would not submit to you a question of engineering skill, with reference to what was the proper way to lay out and construct a canal, with its locks and feeders, we think that you may say, with reference to so simple a matter as the construction of this wall, and its proper backing, whether it was properly done, or whether it was so negligently done that the water was unnecessarily permitted to percolate through the ground, to the injury of other persons.

Nathan Jacobs testifies to you that the water became manifest in his cellar in 1885. That was prior to the disturbance of this wall, and prior to the erection of the new wall, and a year prior, as we understand the evidence, to any appearance of water in the cellar of Mrs. Goldstein, or anybody else. His injury seems to have antedated the injury of Mrs. Goldstein, by the period of a year. You will consider whether there is

any evidence that the water which Mr. Jacobs says he found in his cellar in the year 1885, came from the Delaware & Hudson Canal, at all, or whether it came from some other source. I do not recollect that there is any evidence about the rise and fall of the water that year. The burden rests upon him to show you that the water came from the canal by reason of the negligence of the defendant, before he can ask to recover for that time. But if he has satisfied you that that water, in 1885, came from the canal, and not from some other source, and that it came by reason of the negligence of the defendant, then he would be entitled to recover for the damages suffered by him during that year. If he has not satisfied you that the water came from the canal during that year, and also that it came by reason of the negligence of the defendant, then he cannot recover for the damages suffered by him during that year, including the cement wall which he put in the front of his cellar that year.

Another question has been discussed in this case, relating to the old sewer in Seventh street. Upon that subject we say to you that when one person brings suit against another to recover damages alleged to be caused by the negligence of the defendant, this negligence must appear to be what is called, in law, the proximate cause, the direct cause of the injury. For instance, if one man turns the water from his house, or lot, in a direction where it runs harmlessly to a stream, and can do no injury to any person; diverts it from its former course, but conducts it in a new course, where it is entirely harmless, and some third person, for whose acts he is not responsible, comes and takes that water, and diverts it into a neighbor's cellar, the conduct of that first party is what is known, in law, as the remote cause of the injury. It is not the direct, or proximate cause, but there is another party intervening between his action and the injury, and the law says that the injured party cannot recover against the first party for that injury. But in the construction and maintenance of their canal the defendants were required to have regard to the conditions then existing. If the defendants so constructed their canal as to leave water percolating through the bottom and working into the gravel, which found a natural water course in that gravel, and flowed harmlessly into the river, and subsequently some person, by

the erection of some structure in the street, had cut off that water course, and diverted· the water to the plaintiffs' injury, the defendant could not be held responsible, because their act had occasioned no injury, but the injury came from the act of another person, afterward intervening. [But in maintaining their canal, the right of parties to construct sewers in the street must be recognized. And when they repaired the canal, whatever act they do with reference to repairing and maintaining it, must be done with reference to the situation as it actually existed at the time.] [7]

[A sewer had been constructed from this Snyder building down to the river. Is there any evidence in this case that this sewer has had any effect upon the course which the water has taken after it left the Delaware & Hudson Canal Basin? This sewer has not been opened, nor the surroundings of the sewer examined, west of Second street.] [6] We think that if the evidence justifies you in finding that the defendant was guilty of negligence, in constructing or maintaining this wall, and the defendant sets up that by the act of some other party the water, after it left the canal, was diverted from its natural course on to the premises of the plaintiffs, then the defendant is bound to show that. In that case the burden of proof rests upon the company and it is bound to show you that this sewer did divert the water, and was the instrument and reason of turning the course of the water to the premises of the plaintiffs. Has it done so? Is there any evidence in this case from which you can infer that the action of the water, or its course, has been affected in any way by the existence of this old wooden sewer? [This sewer was lawfully constructed in the street; and, if the defendant, subsequent to the erection of the sewer, so managed its canal that the water passed out from it, and came in contact with that sewer, and was so turned into the premises of the plaintiffs, we do not think that the defendant could set up the existence of the sewer to relieve it from the responsibility. This is about all that it is necessary for us to say to you with reference to the law in the case.] [8] First, did the water come from the defendant's basin, and into the cellars of the plaintiffs? If not, that is the end of the case, and your verdict must be for the defendant. If it did, then did it so come by reason of any negligence on the part of the defendant,

in constructing or maintaining its canal? If such negligence is not shown, that is an end of the case, and the verdict must be for the defendant. If you find the negligence, then is there any evidence in this case to show you that notwithstanding the negligence of the defendant, the water passing from its canal would have passed harmlessly into the river, except that subsequently some other person had interfered by the construction or erection of a new channel, by which he diverted the water coming from the canal from its natural flow and channel, and turned it on to the premises of the plaintiffs? If you find these issues in favor of the defendant, that would end the case. If you find them all in favor of the plaintiffs, then would come the question of damages. . . . .

The plaintiffs' counsel have submitted certain points in writing, asking us to charge you as follows:

1. It was not the duty of the plaintiffs to maintain a sewer to carry off the overflowing or percolating water from the canal of the defendant, and if the water complained of came from the defendant's canal basin, it is immaterial by what course it reached the cellars of the plaintiffs, and whether the old sewer was clogged, or open.

Answer: We have already said all that need be said upon that subject; that if the defendant so conducted its business as to allow the water to percolate out into the soil and gravel, where it would follow a natural course to the river, and do no harm, and some other person afterwards diverted it to the plaintiffs' cellars, the defendant would not be responsible. But whether you can find any evidence of anything of that kind in this case, is a matter for you, and not for the court. We cannot say, as asked in this point, that it would be immaterial by what course it reached the cellars of the plaintiffs. But we say that unless you can find that somebody else has wrongfully diverted it, or unless you can find from the evidence that the effect of the defendant's negligence, if it was negligent, would have been harmless to these plaintiffs, if some one else had not come in and turned the water into the cellars of the plaintiffs, the defendant would be responsible for the results of its negligence.[4]

2. If the jury find from the evidence that by reason of the improper construction or maintenance of the canal basin, the

water flowed therefrom into the cellars of the plaintiffs, the defendant is liable for the resulting damages.

Answer: We affirm this point. We understand this point to mean by the "improper construction or maintenance," the negligent construction or maintenance, and so understanding it, we affirm the point.[1]

3. If the jury find from the evidence that the defendant, in repairing the basin in the rear of the Knapp store house, did its work so carelessly or negligently as to allow the water to leak through the bank, and the jury find that the water in the cellars comes through such leak, then the defendant is liable to action, and their verdict must be for the plaintiffs.

Answer: We affirm this point, also unless you can find, as we have already said, that the damage was done through the intervening act of some third person.[2]

The defendant's counsel have requested us to instruct you:

1. The defendant is not responsible for the damage complained of, if the water that caused it reached the cellars of the plaintiffs in consequence of being diverted from its natural course in percolation, by an artificial channel or obstruction placed in the ground by some person other than the defendant. And the evidence being uncontradicted of the existence of such a channel or obstruction, and that the water causing the damage came immediately from said channel, or obstruction, or the line in which it was laid, there can be no recovery.

Answer: We cannot affirm this point. We cannot say that the evidence is clear and uncontradicted that this channel or obstruction diverted the water and turned it upon the plaintiffs' property. If there is any question about that, it is for you.[5]

2. There is no evidence of any negligence on the part of the defendant, contributing to the injury complained of, and therefore the verdict must be for the defendant.

Answer: We cannot affirm this point. It asks us to take the case away from you, which we cannot do.[3]

You will now take this case, and give it your fair and impartial consideration. You have not only heard the evidence, but you have been upon the premises and seen the ground. The purpose of your going upon the ground was to enable you to understand the evidence, as it has been presented here in the case, by seeing the situation and surroundings, so that you can

apply that evidence more clearly in your own minds, and understand its bearing upon the questions at issue. It was not with the view that you should go down there and make up your minds as to how much damage had been done, independently of the evidence. That was a matter for these parties to prove, and you must determine it from the evidence, if you come to that. But your view of these buildings, and their relative situation and location, as to each other, and as to the canal basin, is a proper matter for you to consider in enabling you to understand and apply the evidence which you have heard in the case. It may give you a clearer idea of the situation, and enable you to understand the evidence as you could not understand it sitting here in court. For the same purpose, you have been permitted to take and examine the map which has been presented here in court.

The verdicts were for the plaintiffs for $505 and $565 respectively, and judgments were entered thereon; whereupon the defendants took these writs assigning for error:

1, 2. The answers to plaintiffs' points.[1] [2]

3. The answer to defendant's point.[3]

4. The answer to plaintiffs' point.[4]

5. The answer to defendant's point.[5]

6–8. The parts of the charge embraced in [  ] [6 to 8]

*Mr. H. Wilson* (with him *Mr. W. H. Dimmick*), for the plaintiff in error:

1. There was no such connection between the repairing of the basin wall and the flooding of either cellar, as to present them in the relation of cause and effect; and the mere fact of percolation of water from the basin was not evidence of negligence in its construction or repair. The testimony was entirely barren of evidence of negligence on the part of the defendant. The plaintiffs' second and third points should, therefore, have been refused, and the defendant's second point affirmed, as it is well settled that an act performed in pursuance of lawful authority and in a proper manner, like the construction and maintenance of defendant's canal, subjects the owner to no liability for consequential damages: Dykeman v. Del. & H. Canal Co., 29 N. Y. 642; Radcliff v. Mayor, etc., of Brooklyn, 4 Comst. 195

(53 Am. Dec. 357); Bellinger v. Railroad Co., 23 N. Y. 42; Whitaker v. Del. & Hud. Canal Co., 87 Pa. 34.

2. The agency of the sewer in diverting the course of the percolation from the basin is clear and unquestionable. In its absence, the percolating water would have been diffused throughout the soil, without injury to any adjacent property, as it had been for forty years before its construction, and as it still continued to be in all other directions. Had it remained unobstructed, it would still have afforded an outlet to the water as it had done for a dozen years previously. But when the water was deprived of this outlet it formed a channel outside the sewer by which it finally made its way to the plaintiffs' cellars, which it never would have reached in the natural course of percolation. It is clear therefore that the sewer was the proximate cause of the injury: Pittsb. South Ry. Co. v. Taylor, 104 Pa. 315; West Mahanoy Tp. v. Watson, 112 Pa. 574; 2 Parsons on Cont. 180; Penn. R. Co. v. Kerr, 62 Pa. 353.

*Mr. A. T. Searle* and *Mr. Geo. S. Purdy* (with them *Mr. E. C. Mumford*), for the defendants in error.

OPINION, MR. JUSTICE CLARK:

These two cases are brought against the Delaware & Hudson Canal Company for damages suffered from the negligence of the company in not properly maintaining their canal basin, in the borough of Honesdale, by reason whereof water was permitted to leak and flow from the basin into the plaintiffs' premises. The cases are distinct, having been brought by different plaintiffs for distinct injuries suffered from the same cause. In one of them, the plaintiff is Emma Goldstein, who claims damages to her dwelling-house from a flow of water into her cellar; in the other, the plaintiff is Nathan Jacobs, who claims to have been injured by a similar flow of water into the basement of his barn and stables. As the evidence, to a large extent, was the same in both cases, they were, by agreement of counsel, tried together in the court below and were argued together in this court.

It is admitted that the Delaware & Hudson Canal Company is a corporation chartered under the laws of the state of New York, and possessed of certain powers under the laws of Penn-

sylvania, and that under its charter and the powers thus conferred the company is authorized to construct and maintain the canal, including the canal basin in question. But the enjoyment of this right carries with it the correlative or correspondent duty to construct and maintain the canal and basin in such substantial manner as not unnecessarily to annoy or injure others. The plaintiffs, in order to recover, must, therefore, establish the fact of negligence; for if we concede the right to maintain the basin, and to use it in connection with the canal, damages resulting to another from the lawful use by the owner, in the absence of malice or negligence, are damnum absque injuria: Penn. Coal Co. v. Sanderson, 113 Pa. 126.

The material and substantial facts involved in the case, therefore, were whether the water which flowed into the plaintiffs' premises, came from the canal basin, and whether this flow of water was owing to the defendant's negligence. These subjects of inquiry were submitted to the jury in the plainest and most explicit manner: " Are you satisfied," says the learned judge in his charge, " that the water found in the cellars of the plaintiffs came from this canal? . . . . . It is for you to determine this first question. Did the water that disturbed these plaintiffs come from the Delaware & Hudson Canal Company's basin? If it did not, if it is not shown to have come from there, then the plaintiffs could not recover in this action. . . . . But if it is shown to have come from the canal basin the next question is, have the plaintiffs shown to you that it came from the basin by reason of some negligence on the part of the defendant. Before the plaintiffs or either of them can recover against the company, they must show, first, that this water came from the company's canal; and, second, that it came by reason of some negligence on part of the defendant in maintaining that canal. And, as we have said, the burden of establishing these facts is upon the plaintiffs."

The jury having found for the plaintiffs, under such instructions, we must, if there is any evidence to justify the submission, assume the facts upon which the verdict necessarily rests. There was evidence that when the water in the basin was high it flowed into the cellars, and when it was low it did not; that the connection between the basin and the cellars was such that the swell of the water when a boat came in caused an increased

flow into the cellars. These facts certainly pointed to the canal basin as the source of the difficulty. There was evidence, also, that the water first appeared in these cellars about the time, or very shortly before the old wall fell in, and continued to come in from that time until the cellars were drained by the new sewer. The witnesses testified as to the rebuilding of the wall, as to the materials employed, the season of the year, and the condition of the soil when it was rebuilt, and generally as to the method of construction. The fact was conceded that before the year 1885 the water did not run into these cellars, and that after that it did. From all these facts an inference might fairly be drawn that the flow of water was owing to the imperfect condition of the basin or to the negligent construction of the wall.

The evidence, it is true, was not strong, but it was of sufficient strength to compel a submission of it to the jury. There was doubtless countervailing proof, but the whole question was one of fact, and the jury was the proper tribunal for its determination. It appeared, also, that the matter had been brought to the company's notice, and an investigation showed that water was in fact escaping in considerable quantities in the rear of Knapp's store. An ineffectual effort was made to stop the leak; whether this was conducted with due diligence was also for the jury. Upon an examination of the whole case, although the testimony on this point is certainly meagre, we are of opinion it would have been error in the court to have withdrawn it from the jury.

It is contended, however, that even if we assume the basin, owing to its imperfect construction or maintenance, to have been the source from which the water came, the injury was immediately attributable to the existence of the sewer, which in 1872 was laid from Snyder's cellar to the river; that this sewer, taking up the water which escaped from the basin, conducted it, out of the course it might otherwise have taken, into the plaintiffs' premises, and that the sewer was, therefore, the proximate cause of the injury. But Snyder, with the leave of the municipal authorities, certainly had a right to construct a sewer, and to conduct the water in his cellar to the river. The municipality made no complaint then, and makes none now; after the lapse of twelve or thirteen years, in a contro-

versy between other parties, the sewer will be presumed to have been constructed with their assent. The sewer must, therefore, be regarded as a lawful construction, and being such, the company cannot protect itself from the consequences of its own negligence, by charging them to the action of the sewer. The company was bound to construct and maintain the basin in a good and substantial manner; to exercise diligence and care, proportioned to the risk which such an undertaking involved to the property of others, and was bound to take notice of the existence of any lawful structure or construction, which might be affected thereby, or by means of which the property of others, through their negligence, might be affected.

The criticisms which have been made upon certain alleged inaccuracies of statement in the judge's charge, in this view of the case are unimportant.

> The judgment is affirmed in each of the cases above stated.