## Beecher et ux. *v.* Dull et al., Appellants.

Argued May 21, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Berne H. Evans,* of *Hause, Evans & Baker,* for appellants.—The evidence did not show a nuisance: Penna. Lead Co.'s App., 96 Pa. 116; Com. v. R. R., 24 Pa. 159; Rafferty v. Davis, 260 Pa. 563; Glenn v. Chris-

tie, 17 Mont. Co. R. 202; House of Refuge v. Dyer Co., 43 Pa. Superior Ct. 320; Zahniser v. Torpedo Co., 190 Pa. 351; Pfeiffer v. Brown, 165 Pa. 267.

An injunction will not issue, except in a clear case, to restrain a long established business, conducted in a careful manner and in accordance with the best known practices, nor where its issuance will do more damage than the acts complained of: Wier's App., 74 Pa. 230; Richard's App., 57 Pa. 105; Elliott Nursery v. Light Co., 281 Pa. 166.

*Homer L. Kreider,* with him *Elmer E. Erb,* for appellees.—The evidence was sufficient to warrant the court in restraining the operators of a preëxisting quarry from throwing stones on plaintiffs' premises: Mulchanock v. Cement Co., 253 Pa. 262; Evans v. Fertilizer Co., 160 Pa. 209; Howell v. M'Coy, 3 Rawle 256; Smith v. Phillips, 8 Phila. 10; Wier's App., 74 Pa. 230; Ladies Decorative Art Club's App., 22 W. N. C. 75.

The expansion of a community may make an industry a nuisance: Rhodes v. Dunbar, 57 Pa. 275; Wier's App., 74 Pa. 230, 241; Smith v. Cummings, 2 Pars. Eq. 92; Brady v. Weeks, 3 Barbour 156.

The continuous blasting which produced vibrations, doing material damage to plaintiffs' property, and threatening to continue so to do, was properly enjoined, irrespective of the question of negligence: P. R. R. v. Coal Co., 281 Pa. 233; Hindson v. Markle, 171 Pa. 138; Frazier v. Rock Co., 17 Montg. Co. R. 114; Pfeiffer v. Brown, 165 Pa. 267; McCune v. Coal Co., 238 Pa. 83; Clouse v. Crow, 68 Pa. Superior Ct. 248.

The quarry as operated constituted a nuisance: Stokes v. R. R., 214 Pa. 415.

OPINION BY MR. JUSTICE FRAZER, June 30, 1928:

Plaintiffs own and occupy a brick dwelling situated on the William Penn Highway in Swatara Township, Dauphin County, near the City of Harrisburg. Defend-

ants operate a limestone quarry on the opposite side of the highway, 125 feet back therefrom, and 300 feet from plaintiffs' dwelling. Plaintiffs' house was erected in 1926, while defendants have been operating the quarry for thirteen years, and it had been worked by defendants' predecessor in title for many years previous to that time. The process of operation of the quarry consisted in drilling holes in the surface to below the depth of the floor and about 15 feet back from the breast of the quarry, in which holes heavy charges of dynamite were deposited, with the result that upon discharging the explosive sufficient rock was severed to supply the needs of the quarry for an entire year. The large blocks of stone thus loosened and thrown to the floor of the quarry were required to be broken in small sizes for use. This was done by a process known as "mud capping," performed by placing sticks of dynamite on top of the stone, covering it with mud or dirt and exploding it with a fuse. This operation resulted in considerable vibration and noise and also threw pieces of broken stone onto surrounding property.

The court below found, among other things, substantially as follows: On December 29, 1926, a heavy blast was fired to break down the breast of the quarry, about 1,900 pounds of dynamite being used. An inspection of plaintiffs' house on the following day showed cracks in the plaster on the walls and ceiling, which the evidence tended to demonstrate was caused by concussion produced by the blast above mentioned. It also made doors in plaintiffs' house to open, books and other small articles of furniture to fall, and pictures to drop from their hangings, thus supporting the inference of very considerable vibration from the operation of the quarry. In addition to this, the concussion from the mud blasts, which were of greater frequency throughout the year, threw stones of various sizes onto plaintiffs' property with the resulting danger of personal injury, caused furniture to move, windows to rattle and affected the health of plain-

tiffs. These findings of the court below are supported by the testimony.

The court concluded that defendants' acts constituted such injury to plaintiffs' property as entitled them to a decree restraining defendants from operating their quarry in such manner as to cause jarring and vibration of plaintiffs' house and premises so as to do injury to the property, causing stones and other materials to be thrown on plaintiffs' premises and constituting a nuisance, interfering with "the rights, comforts, health and property of plaintiffs"; a decree was entered accordingly. Defendants appealed.

The arguments presented on this appeal involve mainly a construction of the principles announced in Penna. Coal Co. v. Sanderson, 113 Pa. 126 (a case which, we said in Sullivan v. Jones and Laughlin Steel Co., 208 Pa. 540, 549, "has never been and never ought to be extended beyond the limitations put upon it by its own facts"), on the one hand, and in Pfeiffer v. Brown, 165 Pa. 267, an example on the other hand. The former class of cases applies the rule that damages resulting to another from a natural and lawful use by a person of his own premises, are, in absence of malice or negligence, damages without remedy, while the latter adopts the common law principle that one must so use his property as not to injure that of another. Cases necessarily arise where these two opposing rules conflict, and when this occurs the right to use one's own property must prevail, providing the resulting damage to another can not be avoided, or only at such expense as would be practically prohibitive to a person in the enjoyment of his own land: Pfeiffer v. Brown, supra. In applying these rules, the court said in the above case, (page 274) : "If the expense of preventing the damage from his [the aggressor's] act is such as practically to counterbalance the expected profit or benefit, then it is clearly unreasonable, and beyond what he could justly be called upon to assume. If, on the other hand, how-

ever large in actual amount, it is small in proportion to the gain to himself, it is reasonable in regard to his neighbor's rights, and he should pay it to prevent the damage, or should make compensation for the injury done. Between these two extremes lies a debatable region where the cases must stand upon their own facts, under the only general rule that can be laid down in advance, that the expense required would so detract from the purpose and benefit of the contemplated act, as to be a substantial deprivation of the right to the use of one's own property. If damage could have been prevented short of this it is injuria which will sustain an action." See also P. R. R. v. Sagamore Coal Co., 281 Pa. 233.

The burden was on defendants to show that the use of their property which caused the injury to plaintiffs was unavoidable or could not have been prevented except by an expenditure which would have substantially deprived them of the use of their property: Mc Cune v. Pittsburgh & Baltimore Coal Co., 238 Pa. 83, 89. It was shown by the manager of defendants' quarry that the cost of drilling and preparing for a big blast, including the dynamite, was about $800, and the same witness testified that, as a result of each blast, they realized a clear profit of $1,000 over all expenses and that blasting was the most economical method of operating the quarry. The evidence is not clear, however, to what extent the use of small blasts would decrease the profit. The witness made comparison with the use of the steam drill which, he stated, would take up all the profit, but failed to make a comparison between the large and small dynamite blast. The evidence as a whole is insufficient to justify the conclusion that it was impractical for defendants to conduct their business at a profit without continuance of the injuries complained of. The same witness said, on cross-examination, that in his opinion the blast of 1,900 pounds was too heavy under the circumstances, and he had cautioned the workmen to be careful.

In view of the evidence of the damage to plaintiffs' property, the throwing of stones thereon and the effect on the health of one of plaintiffs, it was unnecessary for them to show negligent operation of the quarry. The acts of defendants, since they caused damage to plaintiffs' property and interfered with the reasonable enjoyment of the same, constituted a nuisance (Stokes v. P. R. R. Co., 214 Pa. 415, 420), and as such could be restrained, regardless of the question of negligence. "The decided weight of authority supports the view that where one explodes blasts on his own land and thereby throws rock, earth or debris on the premises of his neighbor, he commits a trespass and is answerable for the damage caused, irrespective of whether the blasting is negligently done. This rule is not restricted to liability for injury to the land or improvements of an adjoining owner. As the safety of persons is more sacred than the safety of property, the liability extends to personal injuries inflicted on such adjoining owner or on any one who is lawfully on the premises. The rule extends, moreover, to injuries inflicted on persons traveling on a public highway": 11 Ruling Case Law, section 673; Mulchanock v. Whitehall Mfg. Co., 253 Pa. 262, 264.

The decree entered by the court below does not prevent defendants from operating their quarry in a proper manner and the evidence indicates that it is possible to do so without serious loss or inconvenience to defendants.

The decree is therefore affirmed at defendants' costs.