## Pregrad v. Ocean Coal Company.

*Bauer & Copeland,* for plaintiffs; *Smith, Best & Horn,* for defendant.

WHITTEN, J.—In their statement of claim, the plaintiffs aver that on May 31, 1924, they acquired title to a certain tract of land upon which is erected a building used as a residence and as a store, and that since the date above mentioned they have used the said property as a residence and as a store for the sale of general merchandise; that the defendant owns a coal mine nearby, and that in the operation thereof the defendant has been dumping upon its land adjacent thereto slate and other material near to the property of the plaintiffs; that the defendant has also dumped much rubbish at or near said "slate dump;" that the said slate dump and said rubbish have been burning for about two years prior to the bringing of this suit, thereby causing

smoke, dust, fumes and gases to arise therefrom, which are and have been blown "onto" and upon the property of the plaintiffs, thereby injuring the plaintiffs' house and garden, rendering said house and store unfit for use and injuring the health of the plaintiffs and their family; that "all the injury and damage set forth above was caused by the willful acts of the defendant in dumping and burning said slate and rubbish, and the failure of the defendant to control said dumping and burning;" and claiming punitive and compensatory damages in the sum of $10,000.

The testimony is undisputed that the defendant owned a tract of coal lands and that in mining and removing coal therefrom large quantities of slate and rock from the said mine were necessarily brought to the surface and wasted upon lands nearby; that prior to the purchase by the plaintiffs of the house and lot in question, the defendant in the ordinary development of its mine had deposited large quantities of slate and rock upon land owned by it, which "slate dump" was then burning by reason of spontaneous combustion and continued to burn until after this suit was brought; and that there is no known method by which such fires can be extinguished. There was no proof that the fire in the said "slate dump" was the result of negligence on the part of the defendant.

In other words, there was no proof (a) that the defendant was negligent in depositing rock and slate necessarily removed from its mine upon the surface of its own land; or (b) that the fire which originated in the "slate dump" was due to any negligence on the part of the defendant; or (c) that the failure of the defendant to extinguish the said fire constituted negligence on the part of the defendant.

In view of the undisputed proof, the court instructed the jury that the plaintiffs were not entitled to recover damages by reason of the acts or omissions of the defendant in relation to the "slate dump," for the reason that the plaintiffs failed to prove that the injuries complained of were caused by negligence on the part of the defendant.

In their motion for a new trial, plaintiffs' learned counsel allege in support of said motion:

"5. That the court erred in instructing the jury that negligence was the basis of the right of the plaintiffs to recover.

"6. The court erred in instructing the jury that the burden was on the plaintiffs of showing negligence on the part of the defendant."

Indeed, plaintiffs' learned counsel—not denying the plaintiffs' failure to prove that the fumes emanating from the burning "slate dump" were caused by negligence on the part of the defendant—earnestly contend in their motion for a new trial that the basis of plaintiffs' right to recover damages was not negligence on the part of the defendant, but that the basis of the plaintiffs' claim was defendant's "willful acts . . . in dumping and burning said slate and rubbish, and the failure of the defendant to control said dumping and burning . . . without any regard for the rights and property of the plaintiffs."

However, as above stated, there was no proof that the defendant was responsible for the burning of the said rock and slate, and the proofs were uncontradicted that there is no known method whereby such a fire may be extinguished. Therefore, upon the plaintiffs' theory of the case, there was no proof to sustain a verdict by reason of the fumes emanating from the burning of the rock and slate necessarily taken from the defendant's mine and cast upon its own land. However, the manufacture of coke or of iron or steel is not a natural and necessary use of one's property.

In the absence of proof of negligence, an owner of property is not responsible for injuries to another, which injuries are the natural and necessary result of the development of its own land by such owner: Campbell v. Bessemer Coke Co., 23 Pa. Superior Ct. 374, 380.

The duty rested on the defendant of using the most effective known means and appliances to prevent the fumes from its "slate dump" from injuring the properties of others nearby.

Where the injury to the plaintiff results from the natural and lawful use of the land of the defendant itself and is the necessary result of mining operations and the preparation of the coal for market, the injury thus resulting to another in the neighborhood is *damnum absque injuria:* Conti v. New Castle Lime & Stone Co., 94 Pa. Superior Ct. 321, 325.

"So long as a mining company carries on its business in the ordinary way and adopts and uses the precautions usually and customarily prevailing in the operation of such plants, it is not accountable for the incidental annoyances and damages that necessarily follow its mining operations:" Alexander v. Wilkes-Barre Anthracite Coal Co., 254 Pa. 1.

In the above case, the Supreme Court (page 5) said: "In connection with the mining of anthracite coal the erection and use of breakers, washeries, fans, and other machinery is a necessary and usual incident in the operation of such mines and a certain amount of noise and dust will necessarily result from carrying on the business and must be expected and endured by persons who take up their residence in a neighborhood devoted to such industries. Defendant's business is a lawful one, consisting of the development of the natural resources of the land, in which the interests of the entire community are concerned and for which large expenditures have been made; and so long as defendant carries on its business in the ordinary way and adopts and uses the precautions usually and customarily prevailing in the operation of such plants, as has been done in this case, it is not accountable for incidental annoyances and damages that necessarily follow its mining operations."

"While a mining company has the right not only to mine its coal but also to prepare it for market, it must, in preparing the coal, use the most effective known means and appliances to prevent the dust generated in breaking and separating the coal from being borne and scattered by the winds over and upon adjoining and nearby properties so as to prevent injury to such properties.

"If the company uses the most effective and approved known appliances to control the dust and some of the dust still escapes, the company is not responsible for the injurious results:" Harvey v. Susquehanna Coal Co., 201 Pa. 63.

In the above case, the Supreme Court (page 68) said: "The appellant has the right not only to mine its coal but to prepare it for the market. In so preparing it by artificial means, volumes of dust necessarily arise, which, if not controlled, as far as possible, by proper appliances and the exercise of proper care, will be borne and scattered by the winds over and upon adjoining and nearby properties and injuries to the same must result. If such injuries can be avoided by the most effective and approved means known of controlling coal dust, it is the duty of the appellant to adopt them. The maxim *"sic utere tuo ut alienum non laedas,"* as applied to this coal company, does not mean that it cannot prepare its coal for market, but that, in so preparing the same, due regard must be had for the rights of others by controlling, as far as possible, through the most effective known means, the dust generated in breaking and separating the coal."

See, also, Elder *v.* Lykens Valley Coal Co., 157 Pa. 490; Campbell *v.* Brandywine Co., 52 Pa. Superior Ct. 511.

The instant case belongs to the same class as Harvey *v.* Coal Co., 201 Pa. 63, Alexander *v.* Wilkes-Barre Anthracite Coal Co., 254 Pa. 1, and kindred cases, where the injury complained of resulted from the "natural and lawful use of the land of the defendant itself and was the necessary result of mining operations and the preparation of the product of the mine for market." In such cases, the injury to the owner of lands in the vicinity is *damnum absque injuria*—in the absence of proof that such injury was the result of the defendant's negligence—and where, as here, it affirmatively appears that there is no known method whereby the injury could have been averted.

At the conclusion of the charge to the jury, the court inquired of counsel whether any matter had been omitted or misstated, and plaintiffs' counsel replied that the court had inadvertently stated that the curtains were replaced every two months instead of every month, and the court told the jury to examine the proofs on that question and to decide the matter in accordance with the proofs.

It now appears that before the jury retired plaintiffs' counsel dictated to the stenographer an exception to the effect that the court erred in charging the jury that "negligence is the basis of this action and that the burden is on the plaintiffs to prove negligence."

However, the said exception was not dictated in the hearing of the court, nor was the attention of the court called thereto until after the verdict was rendered. In fact, the trial judge had no knowledge of this exception until the argument of plaintiffs' motion for a new trial. This oversight on the part of plaintiffs' counsel was not intentional and no criticism is intended on that account. However, for reasons hereinafter stated, the plaintiff suffered no injury thereby.

In their written brief in support of their motion for a new trial, plaintiffs' learned counsel frankly state the issue as follows: "The statement of claim sets forth the dumping of coal and other materials by the defendant and the burning of this dump, and then alleges that the smoke, dirt, dust, fumes and gases are blown from this fire across plaintiffs' property, causing certain damage. No element of negligence, that is, carelessness on the part of the defendant in burning the slate or gob from the mine, is alleged by the plaintiffs or shown by the testimony."

True, in their statement of claim, the plaintiffs do not employ the term "negligence" in describing the cause of plaintiffs' alleged injury. However, at the trial—in view of the 9th paragraph of the plaintiffs' statement of claim, wherein it is alleged that the plaintiffs' injuries were caused by certain willful "acts and omissions" on the part of the defendant—the court considered that the ground of the plaintiffs' complaint was negligence on the part of the defendant. In other words, the court considered the term "willful" to mean intentional, viz., that the defendant in opening and operating its mine intentionally placed the slate upon the gob pile in question; and that the plaintiffs further intended the term "willful" as an essential for a recovery of punitive damages.

However, we are now authoritatively advised by plaintiffs' learned counsel that "no element of negligence . . . on the part of the defendant in burning the slate or gob from the mine is alleged by the plaintiffs or shown by the testimony."

Therefore, it now appears that the plaintiffs' cause of action—touching the burning of the slate and gob removed from the defendant's mine—is predi-

cated solely upon the theory that although the defendant was engaged in mining and removing coal from its own lands, yet it is responsible for injuries to the plaintiffs, even though such injury was the natural and necessary result of the development of its own land by the defendant and although the defendant used every known appliance and precaution to avoid such injury.

In answer to the plaintiffs' argument, it is only necessary to state that such contention on the part of the plaintiffs must be overruled under the authority of the cases above cited, including Harvey v. Coal Co., supra; Alexander v. Wilkes-Barre Anthracite Coal Co., supra, and Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126.

Plaintiffs' learned counsel, citing Robb v. Carnegie, 145 Pa. 324; McCune v. Pittsburgh & Balt. Coal Co., 238 Pa. 83; Beecher v. Dull, 294 Pa. 17, and Sullivan v. Steel Co., 208 Pa. 540, contend that the plaintiffs have the right to maintain this action. In Robb v. Carnegie, supra, the defendant was manufacturing coke, the fumes from which caused injury to the plaintiff. In McCune v. Pittsburgh & Balt. Coal Co., supra, the defendant by artificial means diverted the mine water complained of from its natural channel, thus casting same upon plaintiff's land. In Beecher v. Dull, supra, the evidence showed damages to plaintiff's property by throwing stones thereon from the defendant's quarry. In this case there was an actual trespass upon the plaintiff's land. In Sullivan v. Steel Co., supra, the injury to plaintiff was occasioned by an artificial use of defendant's land, to wit, the manufacture of steel, thereby actually destroying the houses and other property in a residential locality in the same city. In Quinn v. American Spiral Spring & Manuf. Co., 293 Pa. 152, also cited by plaintiffs, a private nuisance resulted from a manufacturing plant owned by the defendant. None of these cases are in point.

Our conclusion is that the court did not err in affirming defendant's first and second point for instructions to the jury.

In submitting the case to the jury, the court said: "We now come to the other complaint of the plaintiffs, namely, that the defendant was negligent in placing rubbish, as the term has been described to you, upon this burning dump, or in permitting others to do the same, and that the fumes resulting from that caused the plaintiffs serious injury. If either the defendant or its agents placed rubbish on the dump, or if the defendant consented to the placing of rubbish on the dump and thereby caused damage to the plaintiffs, the jury may find that the defendant was negligent in that regard and may award the plaintiffs compensation for the damages suffered by them by reason of so placing or permitting rubbish to be placed upon the burning dump. On the other hand, if neither the defendant nor its agents placed rubbish on the dump and if the defendant did not consent thereto and had no knowledge that such rubbish was placed on said dump, the plaintiffs cannot recover for injuries by reason of rubbish being placed upon the dump."

The jury returned a verdict in favor of the defendant.

The court is not convinced that any error was committed in the course of the trial to the prejudice of the plaintiffs, but is of the opinion that the plaintiffs' motion for a new trial should be overruled.

### Order.

And now, Nov. 7, 1929, after argument by counsel and upon due consideration, plaintiffs' motion for a new trial is overruled, and the prothonotary is directed to enter judgment upon the verdict upon payment of the jury fee.