## Lauff v. Pittsburgh Coal Company.

*John C. Judson* and *Meyer Goldfarb*, for plaintiff.
*Donnan & Miller* and *Robert Greer*, for defendant.

CUMMINS, J., August 18, 1930.—Plaintiff purchased what is called in common parlance the "surface" of a farm in this county. The Pittsburgh coal underlying this and other adjoining lands constitutes a bituminous mining field of defendant company. On its property, and not far from plaintiff's land, defendant has opened a mine, erected a tipple and is mining coal. Near the pit mouth is the usual gob pile, where is piled the refuse from this mining operation. This gob pile became ignited, and the smoke and fumes therefrom have to some extent injured plaintiff's crops and property, for which plaintiff seeks to recover in an action of trespass.

Upon trial, it affirmatively appeared by plaintiff's case that a gob pile is a necessary incident to a bituminous mine (but besides, this doubtless is a matter of common knowledge) ; that the gob pile in question became ignited from no fault of defendant company, but from spontaneous combustion; and that there is as yet no known practicable method of either extinguishing or controlling such fire. Plaintiff's case was tried on the theory that to be entitled to recover, no proof of negligence was necessary. Negligence not having been established, a judgment of compulsory nonsuit was entered, a motion to take off which is now before the court *in banc.*

The actual damages suffered in this case may not be large, but the legal principles involved concern the whole bituminous mining industry of southwestern Pennsylvania, as well as the owners of property in these mining districts. In this industry millions of dollars have been invested and thousands of wage earners are employed. Mine openings are everywhere, and wherever mine openings, gob piles. Many of these gob piles have become ignited by spontaneous combustion; and, as yet, there is no practicable known means of either controlling or extinguishing such fires. These fires are volcanic in nature, *i. e.*, internal, not external. The residue from them is the "red dog" of which many of the secondary roads of western Pennsylvania have been and are now being constructed. In almost all such cases some damage to property results, yet few suits have been instituted; and, although some of our authorities closely approach it, in no case, so far as we know, have the relative rights of the parties involved been directly passed upon by either of our appellate courts. This case, therefore, calls for a most careful consideration of the basic principles applicable.

We have, of course, the general rule expressed in the oft-quoted maxim, sometimes referred to as the "golden rule" in business, *sic utere tuo ut alienum non lædas;* one must use his own land so as not to injure that of another; otherwise he is liable in damages.

To this general rule we have the equally well-known exception as restated by Mr. Justice Clark in Pennsylvania Coal Co. *v.* Sanderson, 113 Pa. 126, 146: "Every man has the right to the natural use and enjoyment of his own property, and if whilst lawfully in such use and enjoyment, without negligence or malice on his part, an unavoidable loss occurs to his neighbor, it is *damnum absque injuria,* for the rightful use of one's own land may cause damage to another, without any legal wrong."

Mr. Chief Justice Mitchell, using quite similar language, in Strauss *v.* Allentown, 215 Pa. 96, 98, states the exception thus: "Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence, unavoidable loss, is brought upon his neighbor, it is damnum absque injuria. This is the universal rule of the common law, and nowhere is it more strictly enforced than in Pennsylvania."

Again, in the late case of Beecher et ux. *v.* Dull et al., 294 Pa. 17, 20, Mr. Justice Frazer, in speaking of the two classes of cases arising out of this general rule and the exception thereto, more clearly defines the scope of each when he says: "The former class of cases [arising out of the application of the exception] applies the rule that damages resulting to another from a natural and lawful use by a person of his own premises, are, in the absence of malice or negligence, damages without remedy, while the latter [those arising out of the general rule and not within the scope of the exception] adopts the common law principle that one must so use his property as not to injure that of another. Cases necessarily arise where these two opposing rules conflict, and when this occurs the right to use one's own property must prevail, pro-

viding the resulting damage to another [a] cannot be avoided, or [b] only at such expense as would be practically prohibitive to a person in the enjoyment of his own land."

It is true that it has been repeatedly said that the principle involved in this exception should never be extended, but the application of a principle to a new set of facts falling within its scope, does not constitute an extension of the legal principle or rule itself. To hold otherwise would destroy the basis of the whole of our common law, which consists not of concrete cases, but of the principles therein established.

From the application of this general rule of *sic utere tuo ut alienum non lædas* and the exception thereto under consideration, we have two distinct and well-defined groups of cases involving claims for damages for injury to real property resulting from industrial operations on adjoining lands: First, where the industry is either not the natural use and development of the property whereon located, or if so, the injury resulting can be avoided at a reasonable expense, in which cases proof alone of the injury will support a recovery, of which class Evans *v.* Fertilizing Co., 160 Pa. 209, Kent *v.* General Chemical Co., 285 Pa. 34, and McCune *v.* Pittsburgh & B. Coal Co., 238 Pa. 83, are examples; and, second, that group of cases where the act or use causing the injury complained of comes within the scope or limits of the exception to the general rule as above defined, in which case plaintiff to be entitled to recover must not only allege, but must prove, that the injury complained of was either the result of negligence or malice: Harvey *v.* Coal Co., 201 Pa. 63, 69; Elder *v.* Lykens Valley Coal Co., 157 Pa. 490, 497; Hindson *v.* Markle, 171 Pa. 138, 143; Collins *v.* Chartiers Valley Gas Co., 131 Pa. 143, 160; Vautier *v.* Atlantic Refining Co., 231 Pa. 8, 13; Robb *v.* Carnegie Bros. & Co., 145 Pa. 324, 340; D. & H. Canal Co. *v.* Goldstein, 125 Pa. 246, 257; Wheatley *v.* Baugh, 25 Pa. 528; Haldeman *v.* Bruckart, 45 Pa. 514; Pennsylvania Coal Co. *v.* Sanderson, 113 Pa. 126; Strauss *v.* Allentown, 215 Pa. 96, 99; Rielly *v.* Stephenson, 222 Pa. 252, 256; Tess *v.* Charleroi Home Building Co., 96 Pa. Superior Ct. 505, 509; Alexander *v.* Wilkes-Barre Anthracite Coal Co., 254 Pa. 1, 6.

In the first of these two groups of cases, the cause of action usually consists in the maintenance of a nuisance; while in the second, it usually consists of negligence, negligent operation or use. As between a coal operator and an individual owner of surface, an act in connection with or a use of land cannot, however, both fall within the exception and at the same time constitute an actionable private nuisance; it cannot be both *damnum absque injuria* and at the same time constitute a tort or wrong. To constitute such a nuisance, the use (not negligent use) must be "in excess of the limitations resulting from the conjoint operation of" the general rule and its exception: Endlich, J., in Evans *v.* Fertilizing Co., *supra*, at page 215. It is important not to confuse those cases not within the exception, involving nuisance as the gravamen of the action, with those within the exception, where the cause of action is negligence.

It has been contended, however, that the doctrine redeclared (for the principle is as old as the law of real property) in the Pennsylvania Coal Company case and kindred cases has been greatly modified by Pfeiffer *v.* Brown, 165 Pa. 267, McCune *v.* Pittsburgh & B. Coal Co., 238 Pa. 83, 95, and Beecher *v.* Dull, 294 Pa. 17, 21. An examination, however, of these authorities discloses no intention to disturb the substantive law as previously announced; nor do they attempt to change or modify the nature of the pleadings required in such cases; they only make clear the application of certain rules of evidence in the proof of such cases. Thus, where a defendant claims immunity from liability

on the theory that the use to which he has put his land (which use is responsible for the injury complained of) falls within the scope of the exception (unless that fact has already been disclosed by the pleadings or the evidence, as is often the case), the burden of proof is upon defendant to bring himself within the exception: Pfeiffer *v.* Brown, *supra*, at page 273; McCune *v.* Pittsburgh & B. Coal Co., *supra;* .Clouse *v.* Crow, 68 Pa. Superior Ct. 248; Campbell *v.* Bessemer Coke Co., 23 Pa. Superior Ct. 374, 379; Beecher *v.* Dull, *supra*. As was said in Pfeiffer *v.* Brown, *supra*, at page 274, "the defendant's right to injure another's land at all, to any extent, is an exception, and the burden is always upon him to bring himself within it."

It of necessity, however, frequently happens that plaintiff's pleadings and the proof fully disclose the exact nature and character of the use to which the defendant has put his land, and that the injury ordinarily thereby resulting is unavoidable, and, therefore, within the scope of the exception; so that the plaintiff in such case must in the first instance assume the burden of proving negligence as his cause of action, at the risk, upon failure so to do, of suffering a compulsory nonsuit: Carr et al. *v.* Northern Liberties, 35 Pa. 324; Strauss *v.* Allentown, 215 Pa. 96. And see Pennsylvania Coal Co. *v.* Sanderson, *supra*. Just as certain acts or omissions are recognized in law as constituting negligence, contributory negligence, or the lack of such, so certain acts done in the natural and lawful use of one's own premises are, from their very inherent nature, recognized in law as being naturally, necessarily and unavoidably incident to the proper use and development of one's own land, so that injury thereby resulting to a neighbor's land is, in the absence of negligence, *damnum absque injuria*.

Thus it is recognized as a legal proposition that the owner of land is acting within the scope of the exception when he builds on his own lot, depriving his neighbor of light, air or view; when he cuts timber from his own timber land, or tills his soil, to the possible injury of his neighbor (Kauffman *v.* Griesemer, 26 Pa. 407); when, in the natural change and development of his own land from agricultural to urban, he interferes with and increases the flow of surface water by merely changing the character of the surface by the opening, paving and guttering of streets (Carr *v.* Northern Liberties, 35 Pa. 324; Strauss *v.* Allentown, 215 Pa. 96; Rielly *v.* Stephenson, 222 Pa. 252; Tess *v.* Charleroi Home Building Ass'n, 96 Pa. Superior Ct. 505); when, by pumping water from a mine, a neighbor's spring goes dry (Wheatley *v.* Baugh, 25 Pa. 528; Haldeman *v.* Bruckart, 45 Pa. 514; Lybe's Appeal, 106 Pa. 626); when the owner, exploring for gas or oil, drills through various strata, possibly resulting in the pollution of the water in his neighbor's well (Collins *v.* Chartiers Valley Gas Co., 131 Pa. 143); when the owner of a coal mine permits water therein to drain by gravity therefrom into a natural watershed, to the injury of a private neighbor surface owner (Pennsylvania Coal Co. *v.* Sanderson, *supra)*; when a coal operator deposits on his own land refuse and culm, possibly later resulting in injury to an adjoining owner (Elder *v.* Lykens Valley Coal Co., 157 Pa. 490, 497; Hindson *v.* Markle, 171 Pa. 138, 143), or when a coal operator erects on his own coal lands a coal breaker for the preparation for market of anthracite coal, from the operation of which the resulting coal dust does injury to a neighbor's home: Harvey *v.* Coal Co., 201 Pa. 63, 67. And see Alexander *v.* Wilkes-Barre Anthracite Coal Co., 254 Pa. 1, 6. In all of these cases, the use to which the owner has put his land is, as a matter of law, recognized as a natural and proper use, which, in the absence of negligence, gives rise to no cause of action for damages; and in all of them, where negligence is relied upon to support a recovery, the plaintiff

must not only allege negligence, but the burden is upon him of proving the negligence alleged. Pfeiffer *v.* Brown et al., Beecher *v.* Dull and McCune *v.* Pittsburgh & B. Coal Company do not, as I understand them, declare a different general rule; they simply hold that, under their own facts, the question as to whether the particular use to which the owner had put his land fell within the exception was, as is frequently the case, a question of fact for the jury.

We are satisfied that, as a matter of law, in the bituminous coal fields of western Pennsylvania a coal operator has a right not only to have mine openings, to erect and operate coal tipples, to drive entries and haulage ways, and to lay and maintain tracks and to operate thereon motors and pit cars, but likewise to have a so-called "gob pile," where he may pile the gob, slate and refuse from such mining operations, as a natural, necessary and unavoidable incident to ordinary and proper mining; and, in the absence of malice or negligence, injury which may thereby result is *damnum absque injuria;* and certainly rights so apparently necessary and essential to the mining industry are not so precarious as to require proof of their very existence wherever indirectly involved in litigation.

Elder *v.* Lykens Valley Coal Co., 157 Pa. 490, 497, of all our authorities is perhaps most nearly in point. In that case the mining company had piled its mining refuse on its own property so close to a small stream that some of it washed down upon and damaged adjoining land. The Supreme Court held, without submitting that question to the jury, that the coal operator had the right to deposit such refuse from its mine on its own land, but that in doing so it was required to use care; and that "for any injury resulting from the want of care, an action will lie."

In Harvey *v.* Coal Co., 201 Pa. 63, plaintiffs owned a number of houses in the immediate vicinity of defendant's coal breaker and sought to recover for injury resulting to them from coal dust escaping from this breaker. The Supreme Court held (pages 68, 69) that the defendant company had "the right not only to mine its coal, but to prepare it for the market;" that, however, in doing so it was the duty of the company to use the most effective and approved means of controlling the coal dust resulting, but that "there can only be a recovery upon the principle of the negligence of the defendants." Their right to have a coal breaker and to operate it was recognized as a matter of law, and was not held to be a question of fact for submission to the jury.

And, again, in the late case of Alexander *v.* Wilkes-Barre Anthracite Coal Co., 254 Pa. 1, 5, the Supreme Court makes this observation: "In connection with the mining of anthracite coal the erection and use of breakers, washeries, fans, and other machinery, is a necessary and usual incident in the operation of such mines, and a certain amount of noise and dust will necessarily result from carrying on the business, and must be expected and endured by persons who take up their residence in a neighborhood devoted to such industries."

Clearly, the defendant company, in the case before us, had a legal right to have its "gob pile" in connection with its mining operation, and would be liable for injury thereby resulting to plaintiff only in case such injury were the result of malice or negligence. But apart from the legal proposition involved, it appears from plaintiff's own testimony that, in this case, there was a necessity for a gob pile.

If correct in our legal conclusion, then the burden of proof was upon plaintiff to prove negligence before entitled to recover. Plaintiff, however, did not try his case on that theory; instead, his contention was that proof of negli-

gence was unnecessary, that the burning gob pile constituted a nuisance, and that, in the absence of negligence, a recovery could be had.

As to the proof of negligence, the general rules of evidence were, of course, applicable. Where one alleges negligence as his cause of action, that the burden of proof is upon him is axiomatic. In this case, the principle of *res ipsa loquitur* did not have application, for that maxim in Pennsylvania is, strictly speaking, limited to cases where there exists an absolute duty or an obligation substantially amounting to that of an insurer; nor does the case fall within that class of cases where, not only was "the transaction in which the accident occurred . . . in the exclusive management of the defendant, and all the elements of the occurrence within . . . [its] control . . . , [but also] the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than [defendant's] negligence." (East End Oil Co. *v.* Pennsylvania Torpedo Co., Ltd., 190 Pa. 350, 353; and see Bryan *v.* Asphalt Co., 289 Pa. 123, 127), for it appears by the testimony of plaintiff's own witness that such gob piles very frequently become ignited, in the absence of negligence, from spontaneous combustion.

In fact it affirmatively appears from plaintiff's own case that the gob pile in question became ignited from no fault on the part of defendant, but from spontaneous combustion by reason of the presence in the slate of pyrites of iron, which easily oxidize when exposed to the air, and that there is, as yet, no known method or means whereby such fires can either be extinguished or controlled.

Plaintiff now contends, however, that, even if proof of negligence were necessary to have entitled his case to be submitted to the jury, there was at least some evidence warranting its submission; that in addition to the unmarketable and waste coal in the gob pile, there was also some marketable coal. But plaintiff's own case clearly established the fact that the spontaneous combustion did not result from coal in the gob pile, whether marketable or otherwise. There was no evidence that the injury resulting from the burning gob pile was materially increased by the presence therein of any quantity of marketable coal, or that defendant company in screening and separating its marketable coal from the refuse, failed to use the most modern and approved machinery, equipment and means generally in use. See Harvey *v.* Coal Co., *supra*, at page 69. Regardless, however, of all this, it developed on the cross-examination of the very witness who had testified that some marketable coal had reached this gob pile, that he himself and his employees were daily engaged in gathering and taking away from this gob pile this very coal, yet that he had been unable to obtain therefrom sufficient for his wants and was, for that very reason, compelled to buy some coal elsewhere.

Plaintiff further contends that when this gob pile became ignited, defendant should have ceased to dump gob thereon and started another gob pile. How this would have lessened the resulting injury is not apparent, for if plaintiff's contention and proof is correct, and it doubtless is, then such new gob pile would likewise have ignited from spontaneous combustion, and it does not reasonably appear that the injury thus resulting would have been less than at present. In fact it appears from plaintiff's case that the present gob pile is already the third from these mining operations; that the first is burned out; that the second is about burned out, and that the third is now burning.

It might have been suggested, but was not in this case, that these mountains of slate, gob and refuse could be spread out over the surface from under which it is taken, but it does not appear that this would prevent its burning. But even if it did, the "cure would be worse than the disease," as this would

538

wholly destroy the surface land not only for its owner, but for all taxable purposes. If such disposition were attempted, it doubtless could and would be restrained, regardless of the nature and scope of the mining rights and privileges possessed by the producer.

The only practicable and usual method, and the one followed throughout the bituminous mining district, has been and is to pile the gob and refuse into as large piles as possible, and, should they become ignited, permit them to burn out. Plaintiff has pointed out no better method; no other solution has been offered; it has not been shown that defendant company, in regard to the gob pile in question, has in any manner failed to exercise such degree of care as an ordinarily prudent producer of bituminous coal would have exercised under the circumstances. Should science develop a method whereby such fires may be prevented, extinguished or controlled, then, but not until then, could coal operators be required to use such means: Collins v. Chartiers Valley Gas Co., 131 Pa. 143, 159, 160. We are satisfied that the court, upon trial, committed no error in entering a judgment of compulsory nonsuit.

And now, August 18, 1930, motion to take off compulsory nonsuit refused.

From Harry D. Hamilton, Washington, Pa.